### BROWNS VALLEY STATE BANK et al. v. PORTER. *

(Circuit Court of Appeals, Eighth Circuit. March 17, 1916.)

No. 4192.

1. PAYMENT ⬳38(1)—APPLICATION—PAYMENT BY THIRD PERSON.

A corporation borrowed money from a bank and gave notes therefor, indorsed by its officers. One of the officers also gave his individual notes for further sums borrowed for the corporation and which he repaid from its funds. *Held* that, the corporation being the real debtor, the indorsers on its note were not entitled to have such payments applied thereon.

[Ed. Note.—For other cases, see Payment, Cent. Dig. § 99; Dec. Dig. ⬳38(1).]

2. BILLS AND NOTES ⬳224—LIABILITY OF INDORSER—LAW GOVERNING.

The liability of one who signs his name on the back of a note to which he is not otherwise a party is determined by the law of the place where the contract was made, which is the place where it became effective by delivery after the signature was made.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 526; Dec. Dig. ⬳224.]

3. BILLS AND NOTES ⬳242—INDORSEMENT BY THIRD PERSON—LIABILITY.

Under the law of Minnesota, which is also the general law, one who writes his name on the back of a note to which he is not otherwise a party is liable as a maker, and is not entitled to demand and notice of nonpayment.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 542, 547, 548, 550, 551; Dec. Dig. ⬳242.]

Appeal from the District Court of the United States for the District of South Dakota; James D. Elliot, Judge.

Suit in equity by Clement F. Porter against the Browns Valley State Bank and Peter Nelson. Decree for complainant, and defendants appeal. Reversed.

F. W. Murphy, of Wheaton, Minn. (J. O. Andrews, of Sisseton, S. D., and Purcell, Divet & Perkins, of Wahpeton, N. D., on the brief), for appellants.

Frank McNulty, of Aberdeen, S. D. (Howard Babcock, of Sisseton, S. D., on the brief), for appellee.

Before SANBORN and SMITH, Circuit Judges, and TRIEBER, District Judge.

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied July 10, 1916.

SMITH, Circuit Judge. The Independent Elevator Company was organized under the laws of South Dakota, and engaged in the grain and coal business at various points in that state, and owned elevators at Wilmot, Peever, and Wecota. The nominal headquarters of the corporation were at Sisseton, S. D. The stockholders were A. J. Norby, his wife, E. E. Norby, appellee Clement F. Porter, and Frank McNulty, who later became circuit judge of the Fifth judicial circuit of South Dakota. About 1907 the corporation established its actual managing office at Minneapolis, Minn. At that time Mr. A. J. Norby moved to Minneapolis, and thereafter, at least, was secretary, treasurer, and general manager of the company. While Mr. Porter and Judge McNulty were nominal directors, they never performed any substantial duties as such, but Norby practically conducted the business as he thought proper. On or about May 10, 1907, a loan was made by the Independent Elevator Company with the Browns Valley State Bank, of Browns Valley, Minn., of $5,000 upon a note signed upon its face by the Independent Elevator Company, by A. J. Norby, Secretary, and upon the back by Mr. Norby, Mr. Porter, and perhaps by Judge McNulty in the same way. This note was signed by Mr. Porter at Minneapolis. It was renewed from time to time, the last renewal being on October 14, 1910. This last renewal was signed on its face by the Independent Elevator Company, by A. J. Norby, Secretary, and upon the back by A. J. Norby, C. F. Porter, and Frank McNulty. The signature upon the face and that of A. J. Norby on the back were both signed at Minneapolis, and the note sent to Clement F. Porter or to Frank McNulty in South Dakota. It was there signed by the recipient and forwarded to the other individual who was to sign it, and signed by him, and then sent to the Browns Valley State Bank in Minnesota, where it was accepted. This note was for $5,000, with interest at 8 per cent., and was payable on demand. It was dated at Minneapolis, and provided it was payable to the order of Browns Valley State Bank, Browns Valley, at its banking house in Minneapolis, Minn. The last provision was a part of the form of note utilized, which was a form of note used in executing obligations to the Scandinavian-American National Bank of Minneapolis.

About July, 1911, upon application of Clement F. Porter, a receiver was appointed for the Independent Elevator Company, and Mr. A. J. Norby departed, as was reported, going to Calgary, and early in 1912 died. On August 24, 1911, Mr. Clement F. Porter paid the interest on the $5,000 note referred to and gave his own note to Peter Nelson, then president, but now vice president, of the bank, for the amount of the note of October 14, 1910, and secured his note by mortgages on lands in Roberts and Grant counties, in South Dakota. In October, 1912, Mr. Porter brought suit against the Browns Valley State Bank and Peter Nelson to cancel the note and mortgages and recover the cash paid, upon the ground that the note of October 14, 1910, had been paid in whole or in part without his knowledge at the time he gave his note for the sum of $5,000. In the complaint it was alleged:

"That plaintiff was not on said 24th day of August, 1911, or at any other time, indebted to said Browns Valley State Bank or to said Peter Nelson in

any sum or amount whatever, and plaintiff did not then or at any other time receive any consideration, either money, property, or thing of value, whatever for indorsing said note of the Independent Elevator Company to the Browns Valley State Bank, or any other note to said Browns Valley State Bank, or for giving said $5,000 note and the mortgages aforesaid to Peter Nelson to secure the same, or for paying said sum of $335 to said Browns Valley State Bank."

The defendants filed separate answers, and Mr. Nelson also filed a cross-bill, asking for judgment for the amount of his $5,000 note and interest, and foreclosure of his mortgages. To this cross-bill the plaintiff filed answer, to which Nelson made replication. This was the state of the issues when the case was tried in June, 1913.

On September 20, 1913, and while the case was still under advisement, plaintiff filed application to amend his answer to the cross-bill by setting up that plaintiff had been discharged from liability upon the note of the Independent Elevator Company by the failure to protest the same and give him notice of the nonpayment. On September 22d the court granted this leave, and on the same day it entered a decree for the plaintiff canceling the note and mortgages in question and awarding plaintiff judgment against both defendants for $335 and interest and the costs of suit. On October 24, 1913, complainant filed an amended answer to the cross-bill, in which he somewhat changed his previous allegations and alleged the lack of protest and notice of nonpayment to him on the note of the Independent Elevator Company.

The parties have argued many questions and have cited numerous authorities, but those points hereafter considered are conclusive of the case, and therefore the others will not be passed upon. It appears from the evidence that after the first note of $5,000 was given by the Independent Elevator Company to the Browns Valley State Bank it wished to increase its borrowings, but was notified that the bank had only $36,000 capital, and was prohibited from making loans to a single person in excess of 15 per cent. of its capital, and that no more money could be loaned to the Elevator Company in its own name for that reason. Thereupon it was arranged that some additional advances should be made upon notes signed by A. J. Norby and usually secured by collateral. From that time on Norby would give his note to the Browns Valley State Bank, and the Elevator Company would then draw on the bank for the amount of the loan and deposit the draft in its bank account. It seems that Norby, like too many failing debtors, to a certain extent manipulated the books of the Independent Elevator Company. For instance, when the first loan of $2,000 of this character was made, in place of entering it among the bills payable of the Independent Elevator Company, he directed the bookkeeper to credit the $2,000 thus obtained upon his individual account, upon which there was a heavy balance against him. It was his practice to pay all his personal expenses by checks drawn upon the funds of the Independent Elevator Company. Such checks, however, were charged to his account on the books of the company for aught that appears. It very satisfactorily appears that the loans made in the name of A. J. Norby were in fact for the Independent Elevator Company, and it received the funds therefrom, and they were deposited to its credit in its bank.

[1] It is the contention of the complainant that, as these sums were paid by the Independent Elevator Company upon the individual notes of Norby, they should now be applied upon the Elevator Company's obligations, and as they exceeded $5,000 in amount the note of October 14, 1910, should be treated as paid in full. The indebtedness in the name of A. J. Norby was in fact the indebtedness of the Independent Elevator Company. It may be conceded an action could not have been maintained by the Bank against the Elevator Company upon the note of Norby. Cragin v. Lovell, 109 U. S. 194, 3 Sup. Ct. 132, 27 L. Ed. 903. But no authority has been cited that, when the real debtor pays his indebtedness, he can recover it back upon the ground that the obligation was given in some one else's name. While Norby had no right to pay his individual debts with the money of the Independent Elevator Company, he had the right to pay the debt of the Independent Elevator Company with its funds, and if the Elevator Company had received the entire proceeds of the Norby notes, he had a right to pay them from its funds, and he especially ordered in the case of each remittance that the same should be applied on those notes. The payments on these took place through a course of years, and all appear upon the face of the books and files of the Elevator Company. Had the complainant and Judge McNulty given due attention to their duties as directors, they would have known these payments were being made, and it was due to the manner in which they conducted the business that they did not know. No discussion need be had of the question, assuming these payments upon the Norby notes to have been illegal, of the right of the complainant to take credit upon the note of October 14, 1910, for the money thus applied to the prejudice of the numerous other creditors of the Elevator Company. There was substantially no evidence that the note of October 14, 1910, had been paid as alleged.

[2] Turning now to the question as to whether complainant had the right to protest and notice of nonpayment of the note of October 14, 1910. He was not entitled to protest. Randolph on Commercial Paper (2d Ed.) 1143; Nelson' v. First National Bank, 69 Fed. 798, 16 C. C. A. 425. For the present let it be conceded that the complainant was liable upon the note of the Elevator Company as indorser as he undoubtedly was as between him and the Elevator Company.

From a very early time there has been a serious conflict as to whether one who signs a note upon the back thereof, to which he is not otherwise a party, becomes a maker, guarantor, surety, or a simple indorser. As the note of October 14, 1910, was made out in Minneapolis, in Minnesota, and there signed by the Independent Elevator Company, by A. J. Norby, Secretary, and was there signed upon the back by A. J. Norby individually, and was then mailed by Norby to either Porter or McNulty in South Dakota, and was there signed upon the back by both of them and mailed to the bank at Browns Valley, Minn., it is clear that as between the Elevator Company and A. J. Norby individually and the bank the note was a Minnesota contract, and the next question is what law governs the construction of the contract as to Porter and McNulty.

Prior to the execution of the note in question the state of South Dakota had adopted the Negotiable Instrument Act, and under it Porter would have been entitled to notice of dishonor. On the other hand, in the state of Minnesota at the time in question the Negotiable Instrument Act had not been adopted by the Legislature. It is laid down in a recent work:

"It has been seen that the contract of the maker of a note is governed by the law of the place of payment; it by no means follows, however, that the contract of the indorser is governed by the same law. The maker binds himself to pay at the place named in the note for payment, and there his contract is to be performed. The indorser promises, upon certain conditions, which are not expressed in the contract of indorsement, but which are implied by law, that he will pay the note, but not that he will pay it at the place named in the note for payment. This promise is general for the payment of the note upon the implied conditions; and such general promise, not specially to be performed elsewhere, is governed by the lex loci contractus, which must determine the conditions upon which he is to be held liable. The indorsement is a separate and substantive contract, and is not necessarily controlled either by the place of payment named in the note or by the residence of the indorser. The general rule is that the contracts of this character are to be construed and their effect determined according to the laws of the state in which they are made, unless it appears that they are to be performed in or according to the laws of another state. The authorities establishing the proposition that the contract of indorsement in such case is governed by the law of the place where made, and not by that of the place where the note is payable, are clear and satisfactory. *The place referred to is the place where the contract itself is made, and not the mere act of writing the name upon the back of the instrument.* It matters not when or where this may have taken place, since there is no indorsement, binding as a contract, until the note or bill is transferred to a third person, with the intent of enabling him to enforce its payment. The place of this effectual transfer is therefore the place of the contract, and the law which there prevails governs its construction. Accordingly, where a person indorses a note in one state, and the note is sold and delivered in another state, the contract of indorsement must be regarded as made in the place where the sale and delivery occurred." 3 Ruling Case Law, pp. 1149, 1150.

Where was this contract of indorsement made? The note was made out at Minneapolis, Minn., upon a blank note, not of the Browns Valley State Bank, but of the Scandinavian-American National Bank of Minneapolis, and was there signed by the Independent Elevator Company, by A. J. Norby, Secretary, and was then signed or indorsed on the back by A. J. Norby individually, and was sent either to Mr. Porter or Judge McNulty, and similarly signed by the recipient and sent to the other indorser, and there signed by him. Both the last two indorsements were put on in South Dakota, and the note was then mailed to the Browns Valley State Bank in Minnesota and accepted by it there. Until it was received and accepted by the bank in Minnesota it never took effect at all. Not only was the note governed by the law of Minnesota, but that was true of the contracts of indorsement, because that was the lex loci contractus of them. Browns Valley is nearly 200 miles from Minneapolis, and it cannot be presumed, if that would be material, that the bank ever saw this note until it came forward from South Dakota, and it was not bound to accept it until after it had so received it and found it satisfactory. It is therefore concluded that this was a Minnesota contract in its entirety, including both the note proper and

the contract of indorsement. Welch Co. v. Gillett, 146 Wis. 61, 130 N. W. 879; Hackley National Bank v. Barry et al., 139 Wis. 96, 120 N. W. 275. This is in harmony with our holding in Lamson Bros. v. Bane, 206 Fed. 253, 124 C. C. A. 121, 46 L. R. A. (N. S.) 650.

[3] It is held, in those states where one who signs upon the back of a note without otherwise being a party to it he is an indorser, he is, of course, entitled to notice of nonpayment, but in those states where he is held a maker, guarantor, or surety he is not entitled to such notice. 7 Cyc. 1074, 1075. Assuming that the note and the contracts of indorsement were to be construed according to the laws of Minnesota and not according to the laws of South Dakota, in Robinson v. Bartlett, 11 Minn. 410 (Gil. 302), it is said:

"The question as to the relation of a party signing his name upon the back of a promissory note, under these circumstances, has been repeatedly before this court for consideration. It has in every instance been determined that his relation and rights and obligations are those of a maker, and that he is not entitled to demand and notice as an indorser. * * * This is in harmony with the weight of authority in England and our own country."

And this rule has existed in Minnesota from territorial days until 1913, when it was changed by statute. Pierse v. Irvine, 1 Minn. 369 (Gil. 272); Rey v. Simpson, 1 Minn. 382 (Gil. 282); Winslow v. Boyden & Willard, 1 Minn. 383 (Gil. 285); McComb v. Thompson, 2 Minn. 139 (Gil. 114) 72 Am. Dec. 84; Marienthal v. Taylor, 2 Minn. 147 (Gil. 123); Peckham v. Gilman, 7 Minn. 446 (Gil. 355); Dennis v. Jackson, 57 Minn. 286, 59 N. W. 198, 47 Am. St. Rep. 603; Peterson v. Russell, 62 Minn. 220, 64 N. W. 555, 29 L. R. A. 612, 54 Am. St. Rep. 634; Schultz et al. v. Howard et al., 63 Minn. 196, 65 N. W. 363, 56 Am. St. Rep. 470. Substantially the same rule is announced in Good v. Martin, 95 U. S. 90, 24 L. Ed. 341; Bendey v. Townsend, 109 U. S. 665; [1] 7 Cyc. 666, 667. See Guernsey v. Imperial Bank of Canada, 188 Fed. 300, 110 C. C. A. 278, 40 L. R. A. (N. S.) 377. It seems entirely clear that the purpose of the complainant was to give credit to the Independent Elevator Company, and he thus became a maker and owed the note when he gave his individual note in place of it, and he has no equity in his favor.

Complainant in argument contends that the section of his complaint quoted was also in the original answer to the cross-bill of Nelson, and that it raised the question that he had not been notified of nonpayment of the note, and that to permit the defendants to now cite the cases tending to show this was a Minnesota contract, and then to show the law of Minnesota, which is the general commercial law as administered in the federal courts, is an injustice to him; but as he first clearly pleaded the lack of notice four months after the trial and more than a month after the decision he is not entitled to complain of surprise on that question.

It is ordered that the decree be reversed, and the cause remanded, with instructions to dismiss the complainant's bill and grant a decree to the defendant Nelson on his cross-bill as prayed, upon presentation for cancellation of the note sued on.

[1] 3 Sup. Ct. 482, 27 L. Ed. 1065.