## F. M. DAVIES & CO. v. PORTER. *

### (Circuit Court of Appeals, Eighth Circuit. February 19, 1918.)

### No. 4954.

1. JURY ⬤28(17)—JURY TRIAL—WAIVER—STIPULATION.

   A stipulation on the first trial, waiving jury trial, does not affect the right of either party to demand trial by jury after judgment on the first trial has been reversed and the cause remanded.

2. JUDGMENT ⬤715(2)—CONCLUSIVENESS—MATTERS CONCLUDED.

   While a judgment is conclusive, not only as to what was decided, but as to what might have been decided, a judgment in an action in the state court against a Chamber of Commerce and defendant, whom it was claimed asserted a lien on a certificate of membership of which plaintiff, as receiver, claimed to be the equitable owner, is not, defendant's lien claim having been denied, conclusive against plaintiff's right to recover against defendant on account of alleged speculative transactions between defendant and the corporation of which plaintiff was receiver.

3. GAMING ⬤26(1)—RECOVERY—STATUTE.

   In the absence of statute, authorizing recovery, money lost in a gaming transaction cannot be recovered, as no court will lend its aid to one who founds his cause of action upon an immoral or illegal act.

4. CORPORATIONS ⬤432(12)—ACTIONS—EVIDENCE—SUFFICIENCY.

   In an action by the receiver of a corporation to recover against defendant on account of alleged speculative transactions claimed to have been carried on through defendant by the secretary-manager of the corporation, evidence *held* to show that such officer was acting for the corporation.

5. CORPORATIONS ⬤428(5)—DIRECTORS—NEGLECT OF DUTY.

   Where corporate directors, who were the sole stockholders, other than an officer of the corporation and his wife, neglected to examine the corporate books, and an examination would have disclosed the transactions complained of, the directors must, by reason of their dereliction of duty, be deemed to have knowledge of such transactions, so that it was imputable to the corporation.

6. APPEAL AND ERROR ⬤1194(1)—REVIEW—PRESUMPTIONS.

   Where the Appellate Court, on reversing judgment for defendant, expressly declared it was not its intention to in any wise pass upon the merits of the controversy, the presumption that there was evidence sufficient to warrant a finding for either party, for as otherwise the court would have affirmed the judgment in favor of defendant, is conclusively negatived.

In Error to the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Action by Clement F. Porter, Jr., receiver of the Independent Elevator Company, against F. M. Davies & Co., a corporation. There was a judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions.

See, also, 224 Fed. 451, 140 C. C. A. 288.

H. V. Mercer, of Minneapolis, Minn. (Krause & Krause, of Dell Rapids, S. D., on the brief), for plaintiff in error.

Frank McNulty, of Aberdeen, S. D. (Howard Babcock, of Sisseton, S. D., on the brief), for defendant in error.

Before SANBORN, Circuit Judge, and TRIEBER and YOUMANS, District Judges.

TRIEBER, District Judge. This case is here a second time, and the writ of error is prosecuted from a judgment entered upon the verdict of a jury in favor of the plaintiff, the defendant in error in this court. For convenience the parties will be referred to herein as they appeared in the court below; the defendant in error as plaintiff, and the plaintiff in error as defendant. In the opinion of the Circuit Court of Appeals (223 Fed. 465, 140 C. C. A. 11), the issues made by the pleadings are set out sufficiently to make it unnecessary to restate them in this opinion.

[1] It is claimed that, as the first trial was had to the court, a jury having been waived by stipulation in writing, it was error to grant plaintiff's motion to try the cause to a jury. The contention is without merit, as such a stipulation does not affect the right of either party to demand a trial by jury, on a second trial, after the judgment in the first trial has been reversed and remanded for a new trial. Burnham v. North Chicago Street Ry. Co., 88 Fed. 627, 32 C. C. A. 64; 24 Cyc. p. 173; 11 A. & E. Encyc. of Law, p. 1108.

[2] It is next claimed that the court erred in excluding the record of a cause determined in the district court for the Fourth judicial circuit, of the county of Hennepin, state of Minnesota, offered for the purpose of sustaining defendant's plea of res adjudicata. That was an action by the present plaintiff against the Chamber of Commerce of Minneapolis and the defendant, claiming that the Independent Elevator Company, of which he was receiver, was the equitable owner of the membership in the Chamber of Commerce, the legal title of which was in the name of A. J. Norby, and on which the defendant claimed a lien under the rules of said Chamber of Commerce, and which membership was about to be sold by directors of the Chamber of Commerce to satisfy defendant's claim of lien. The prayer for relief in the complaint in that cause was to decree the membership certificate, standing in the name of Norby to belong to the plaintiff as receiver of the Independent Elevator Company and entitled to the possession thereof, and that Davies & Co. have no right, title, or interest in or to the same, or any lien upon the same. The only issue in that case, so far as the defendant herein was concerned, was whether it was entitled to a lien on the certificate of membership, and the court held that it was not. In Bates v. Bodie, 245 U. S. 520, 38 Sup. Ct. 182, 62 L. Ed. ——, opinion filed January 21, 1918, the court, after referring to its former decisions, epitomized the law established as a test of the thing adjudged and the extent of its estoppel as follows:

"If the second action is upon the same claim or demand as that in which the judgment pleaded was rendered, the judgment is an absolute bar not only of what was decided but of what might have been decided. If the second

action was upon a different claim or demand, then the judgment is an estoppel 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' "

As there was no such issue involved in that cause as is presented in the instant case, the court committed no error in sustaining plaintiff's objection to the introduction of the record of that cause.

At the close of the evidence, the defendant asked for a peremptory instruction, which was denied by the court, and proper exceptions saved.

[3-5] The object of the action is to recover money by the plaintiff as receiver of the Independent Elevator Company, alleged to have been paid to the defendant by one A. J. Norby, which money belonged to the Elevator Company, as was well known to the defendant, and was used for alleged wagering transactions. The pleadings raised two issues:

(1) Were Norby's transactions with the defendant for himself, or, as general manager of the Elevator Company, for the Elevator Company and its sole benefit?

(2) Were the transactions between Norby and the defendant mere wagering transactions, and, if they were, can the plaintiff recover the moneys, belonging to it, and alleged to have been paid to the defendant?

If Norby acted for himself and unlawfully used the funds of the Elevator Company, which fact was known to the defendant, it is no doubt liable for the money thus unlawfully received and appropriated by it. On the other hand, if he acted as the agent of the Elevator Company, for its sole benefit, with the knowledge and consent, either express or implied of the officers and stockholders of the corporation, defendant was entitled to a directed verdict in its favor.

Whether the transactions between Norby and the defendant were mere wagering or gambling transactions is immaterial, if he acted solely for the Elevator Company, as the law is well settled that in the absence of a statute, authorizing a recovery of money lost in a gaming transaction, the money cannot be recovered, as no court will lend its aid to one, who founds his cause of action upon an immoral or illegal act. Higgins v. McCrea, 116 U. S. 671, 686, 6 Sup. Ct. 557, 29 L. Ed. 764; White v. Barber, 123 U. S. 392, 425, 8 Sup. Ct. 221, 31 L. Ed. 243; Carpenter v. Beal-McDonnell (D. C.) 222 Fed. 453, affirmed 235 Fed. 273, 148 C. C. A. 633. And this is the rule prevailing in the state of Minnesota, where these transactions took place. Franklin v. Stoddart, 34 Minn. 247, 25 N. W. 400; Nagel v. Randall, 115 Minn. 235, 238, 132 N. W. 266.

Did the evidence justify the submission to the jury of the question whether the transactions between Norby and the defendant, were for himself, or for the Elevator Company, whose secretary and manager he was? The evidence is very voluminous, but a careful reading convinces that he acted solely for the Elevator Company, and with the knowledge, if not express, clearly implied, of the directors and stockholders.

. The undisputed evidence shows that the Elevator Company was a corporation existing under the laws of South Dakota. Its stockholders were A. J. Norby and his wife, Clement F. Porter, Sr., and Frank McNulty. The directors were Mr. Porter, who was president, Mr. McNulty, who was vice president, and Mr. Norby, who was secretary and general manager. The business of the corporation was at first transacted at Sisseton, S. D., and later removed to Minneapolis, Minn. The Elevator Company being unwilling to comply with the requirements of the laws of the state of Minnesota, regulating the transaction of business in that state by foreign corporations, and being desirous of obtaining the benefits of a membership in the Chamber of Commerce of Minneapolis, transacted its business through Norby, who had sole charge of it in Minneapolis; the other directors residing in South Dakota. The evidence establishes beyond question that the management of the corporation's business in Minneapolis was left entirely in charge of Norby; the other directors but rarely visiting that office, and never examining its books. The membership in the Chamber of Commerce was taken in his name, but paid for by the Elevator Company, and held by him in trust for the company. Norby during the time employed the defendant as broker in many transactions for the purchase and sale of grain for future delivery, but these transactions were all for the Elevator Company, whose checks were given in all the transactions, most of them drawn by Norby as secretary, and some by Miss Baker, the bookkeeper of the company, at the request of Norby. All moneys, when there were profits, were paid by the defendant by its checks, payable to Norby, and by him deposited to the credit of the Elevator Company, and on the books credited to the profit and loss account, while, when there were losses, they were charged to that account. In a number of instances the Elevator Company made such purchases or sales through defendant for its customers, also in the name of Norby, and the commissions received were credited on the books of the Elevator Company to it. Under the rules of the Chamber of Commerce, its members only were entitled to receive one-half of the commissions charged by brokers, and these were also credited on the books of the company for its benefit. This privilege was no doubt one, if not the main, reason which induced the Elevator Company to purchase a membership in the Chamber of Commerce.

. During the time these transactions took place, the defendant paid to Norby at different times, as profits, sums amounting to $19,444.94, all of which was paid by checks payable to Norby, and by him deposited to the credit of the Elevator Company and credited on its books. Had the directors, or either of them, examined the books of the company, they would have learned of these transactions and that they were for the sole benefit of the company. From a careful reading of the testimony, it is impossible to escape the conclusion that it establishes conclusively that Norby's transactions were for the sole use and benefit of the company, and that they were carried on in his name, for the only reason that the membership in the Chamber of Commerce was in his name. The neglect of the other directors, who were the

sole stockholders, besides Norby and his wife, to examine the books of the corporation for years, which would have shown these transactions, and failing to make any effort whatever to ascertain how the business of the company was being conducted by Norby, was not only a breach of their duties as directors, but also, as by the exercise of any diligence whatever, they could have ascertained the facts, they must be held to have knowledge of them. Gold Mining Co. v. National Bank, 96 U. S. 640, 24 L. Ed. 648; Rolling Mill v. St. Louis, etc., Co., 120 U. S. 256, 7 Sup. Ct. 542, 30 L. Ed. 639; Pittsburg, etc., Co. v. Keokuk, 131 U. S. 371, 9 Sup. Ct. 770, 33 L. Ed. 157. In Brown's Valley State Bank v. Porter, 232 Fed. 434, 146 C. C. A. 428, an action arising out of similar transactions of Norby as general manager of the Elevator Company, in which the evidence was very much like that in this case, we held that his acts were those of the corporation.

[6] The learned trial judge, in his memorandum opinion was under the impression that, when the Court of Appeals reversed the case before, it must have held that there was sufficient evidence to warrant a finding for either party, as otherwise it would have affirmed the judgment in favor of the defendant, although error in the admission of evidence had been committed. But this presumption is conclusively negatived, when the court on a motion for a rehearing said:

"It was not our intention to in any wise pass upon the merits of the controversy. * * * and in view of the possible embarrassment that it may cause the defendant on a new trial the same (referring to the expression, which it was thought might affect the merits) may be omitted from the opinion." 224 Fed. 451, 140 C. C. A. 288.

The court erred in refusing to direct a verdict in favor of the defendant, and the cause is reversed and remanded, with directions to grant a new trial.