FARMERS' ELEVATOR COMPANY OF CRAVEN, Respondent, v. NEW AMSTERDAM CASUALTY CO. OF BALTIMORE, Appellant.

(256 N. W. 109.)

(File No. 7603. Opinion filed June 29, 1934.)

*Fletcher & Fletcher,* of Aberdeen, for Appellant.
*J. M. Berry,* of Ipswich, for Respondent.

WARREN, J. Plaintiff, the Farmers' Elevator Company of Craven, S. D., brought suit against the defendant, the New Amsterdam Casualty Company of Baltimore, Md., to recover the sum of $4,501.78 on a bond issued by said casualty company on one F. A. Van Kirk, who managed the plaintiff elevator from June, 1927, to April, 1931. All during these years the plaintiff paid the annual premium on the bond. While acting as manager, Van Kirk

placed certain orders for grain future on the Board of Trade for a number of individuals who were stockholders of the plaintiff elevator company. These orders were placed with McDonald-Wyman of Minneapolis, Minn. Losses resulted from said speculations, and, when the Minneapolis firm demanded payment, Van Kirk delivered to them certain grain belonging to the plaintiff and a check for $1,500 drawn on the plaintiff's account. Plaintiff thereafter sued the defendant casualty company for Van Kirk's misappropriation of funds and embezzlement. A judgment was rendered in favor of the plaintiff in the sum of $4,420, and defendant has appealed.

Embezzlement as defined by Blackstone is the appropriation to one's own use or benefit of property or moneys intrusted to him by another, such as the embezzlement by clerks, servants, and agents of their employer's money or property. In the instant case the appellant contends that there was no embezzlement on the part of Van Kirk, for the reason that Van Kirk was allowed to buy and sell grain under the direction of the board of directors, that he was allowed to deal in grain futures, and that there is actually no evidence of intent to act wrongfully or contrary to the interests of the corporation.

The bond issued by the appellant casualty company contains a number of provisions, the tenth provision of which reads as follows: "Tenth—That this bond does not indemnify the Employer against loss growing out of, or on account of any hedging, optional trading, or speculation in grain futures or similar transactions of a speculative nature on the part of any of the employees covered hereunder, where such transactions are in grain or other commodities dealt in or handled by the Employer in the usual and ordinary course of its business, whether such transactions are with or without knowledge on the part of the Employer, unless such loss is proven to be directly due to acts of larceny or embezzlement of any Employee bonded hereunder."

Appellant further contends that, since Van Kirk used respondent's property to meet the losses of third persons and not for himself, the surety is relieved of liability.

There is evidence in the record that Joseph D. Lacher as secretary and F. A. Van Kirk as manager were authorized by a resolution to buy and sell in the name of the corporation under the

rules and regulations of the Chamber of Commerce of Minneapolis, Minn., such commodities for future deliveries as they might deem for the best interests of the corporation and association, and designated Joseph D. Lacher, secretary, as the proper official to whom written notice of such transaction should be mailed. The testimony of F. A. Van Kirk was offered by the plaintiff. Some of his testimony hereinafter reproduced from the record is highly illustrative as to how the trades were manipulated, and will be considered upon the question of the sufficiency of the evidence:

"* * * The other debts that this grain paid was that of other individuals, Ed Olson for one, Heimrich Brothers for another; I could not say off-hand just how much these three men owed at the time; I never had any trades myself; I did not owe McDonald-Wyman for any trade of my own, and all of the trades were placed by me for stockholders or directors of the company; three of the directors, Mr. Engle, Mr. Lacher and Mr. Olson had trades; Mr. Engle at the time he had his trade was President of the Company; Mr. Olson was a director of the Company when he had his trades; he was President at one time but I am not sure he was President when he had the first trade; he told me to buy or sell so many thousand bushels of grain for a particular account; some of the officers lost money on their trades and made good what they lost; I think all of the losses were made good except Heimrich Brothers and I think theirs was paid up after a little; it was paid to the elevator; I do not know what the records show whether all of the parties paid up or not and I have no way of showing how much Heimrich Brothers owed; if the records were here that I left in the elevator, I could tell; I have not seen the records of the elevator since I left there; I do not know what number Heimrich Brothers had and could not tell unless I could find the records; I did not hide the records and I did not keep them secret while I was carrying on these trades; the second man had access to these records, but I do not think the directors ever bothered; it laid there on the safe; they had the right to examine the records and could have investigated the contents of the book any day; the book was there on the desk or in the safe.

"This $1,500.00 check Exhibit 'E' was handled as advances on grain; elevator would the last year I was there, advance so much on grain stored by individuals and that $1500.00 check was entered

as an advance and charged to the individuals and that is the way that check was handled; the parties to whom I charged the amount of the check had grain at the elevator at Craven in storage and against that grain in storage, I, as manager, charged the individuals the amount of that check and when I shipped the grain represented by Exhibits 'C,' 'D' and 'F' I expected to collect in from those individuals what they owed the Craven Farmers Elevator Company under those accounts and I did collect from some of them. * * *"

From the foregoing evidence offered by the plaintiff it will be seen that certain directors had full knowledge of the conduct of the trades made by Van Kirk. It further appears that confirmation slips of all the trades were mailed to the secretary. The corporation, through its directors and officers, was fully aware of what was being done, and had both actual and constructive notice thereof.

The controversy in the case before us is, in analogy, on all fours with that in the case of Porter v. Hallett & Carey Co., 40 S. D. 136, 166 N. W. 525, 526. In that case we treated facts which now are pertinent to the case at bar as follows:

"On the face of such books it would appear that plaintiff and not Norby was the real party in interest in the business transacted by defendant. In the light of such books Norby could not have claimed, as against plaintiff, any profits arising from such transactions. The other directors plead ignorance of the contents of the books, and the only possible ground upon which plaintiff could be allowed to recover was because of such alleged ignorance. Plaintiff should not be allowed to base a right of recovery on such directors' ignorance of what clearly appeared on the company's books. It is the duty of a corporation to know what its books disclose; this knowledge should come through its board of directors; and the corporation, as against third parties, should not be heard to plead ignorance when such ignorance, if same in fact existed, resulted from the failure of such directors to advise themselves of what was revealed by the books of the corporation. As was said by the court in Bank v. Porter, 232 F. 437, 146 C. C. A. 431, a case involving the business of plaintiff corporation and in which the evidence was, in great part, identical with that before us:

" 'Had * * * (the two directors of plaintiff other than sec-

retary and manager)· given due attention to their duties as directors, they would have known these payments were being made, and it was due to the manner in which they conducted the business that they did not know.'"

We have examined the record quite closely and fail to find sufficient evidence to sustain the trial court's position in holding the appellant liable under its bond. As said in Porter v. Hallet & Carey Co., supra: " * * * It would be unconscionable to allow plaintiff to recover herein." The books were in the offices of the corporation. No doubt the officers and directors had actual knowledge, and it might further be said that even a casual examination of the files and records kept would disclose to the corporation exactly what was being done. The evidence is insufficient to justify the findings of fact and the judgment of the loss of $4,420. There is considerable testimony to the effect that the losses have all been paid. The testimony is vague and indefinite as to proof of loss, as no effort seems to have been made to ascertain the exact amount of loss and the record seems to admit that an undetermined amount had been paid by some. The record is entirely unsatisfactory as to loss, and there must be a reversal.

The order and judgment appealed from are reversed and the action dismissed.

POLLEY, J., concurs.

CAMPBELL, J., concurs in result.

RUDOLPH, J. (dissenting). I believe the judgment should be affirmed. The record is sufficient, in my opinion, to sustain the finding by the trial court that the·trading conducted by Van Kirk for different individuals was not known or authorized by the corporation. Three of the directors knew nothing about Van Kirk making these trades for individuals, and each of the other directors knew of no other trade being made except his own. The director making the trade for himself, as an individual through Van Kirk, and knowing this was done in the name of the company, was acting adversely to the corporation, and the corporation should not be charged with knowledge on this account. The prevailing opinion states: "It further appears that confirmation slips of all the trades were mailed to the secretary." The record discloses that the secretary denies ever having received such confirmation slips.

An issue of fact was thus presented, and the findings of the court resolved the issues against the defendant.

The facts, in my opinion, do not bring this case within the rule announced in Porter v. Hallet & Carey Co., 40 S. D. 136, 166 N. W. 525. Van Kirk testified that the business of trading for individuals was not recorded in the company books, but that the record of these trades was kept in his own private book. Certainly a private book kept by Van Kirk would not be sufficient to charge the corporation with knowledge of the transactions therein contained. The Porter Case simply holds that it is the duty of the corporation to know what its book discloses. Applying this duty to this corporation, it would not charge it with knowledge of what Van Kirk's private book disclosed.

I am satisfied the record fairly justifies the findings of the trial court to the effect that the grain and money were intentionally taken by Van Kirk to pay for something for which the plaintiff company was not liable, and in my judgment this constitutes an embezzlement within the meaning of section 4227, Rev. Code 1919.

ROBERTS, P. J., concurs in this dissent.