TECHNICAL ECONOMIST CORPORATION *vs.* JOHN F. MOORS & others, trustees.

Suffolk.  March 11, 1926. — May 25, 1926.

Present: BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Contract*, What constitutes. *Frauds, Statute of. Practice, Civil*, Auditor: recommittal of report; Exceptions.

At the hearing by an auditor of an action for a breach of a contract by the defendant to sell certain machinery of the plaintiff, correspondence by letters and telegrams, and telephone communications between the parties relating to whether an option given by the defendant to the plaintiff was being kept open, whether an offer by the plaintiff was accepted by the defendant and whether its conditions were performed by the plaintiff, were *held* to warrant findings that

(1) A completed contract was entered into between the parties under which the plaintiff agreed to purchase and the defendants to sell the machinery for the sum of $14,000;

(2) The time for the carrying out of the terms of the contract was mutually understood to be January 15;

(3) The plaintiff was able, ready and willing to carry out the contract on the date named;

(4) The defendant refused to sell to the plaintiff but on January 12 sold to another;

(5) The letters and telegrams offered in evidence constituted a sufficient memorandum in writing required by the statute of frauds to make an enforceable contract;

(6) A check for $500 sent by the plaintiff to the defendant as part of an initial deposit of the purchase price was accepted by the defendant as such and, although afterwards returned, made further compliance with the statute of frauds, G. L. c. 106, § 6, cl. 1, unnecessary.

While it is a general rule that the disposition of a motion to recommit an auditor's report rests in sound judicial discretion and will not be reviewed except for an abuse of this discretion, where by the rule to the auditor his findings of fact are to be final, his rulings upon the admission or exclusion of evidence are reviewable upon a motion to recommit and an order on such motion may be reviewed upon exceptions to this court.

In the action above described, admission by the auditor of evidence of negotiations between the defendant and the person who finally purchased the machinery from him was *held*, even if erroneous, not to have prejudiced the defendant and an exception by the defendant to such an admission was overruled.

CONTRACT, by amendment from a BILL IN EQUITY filed in the Superior Court on January 21, 1924, for the breach of an alleged agreement by the defendants to deliver to the plaintiff certain second hand refrigerating machinery.

Proceedings in the Superior Court before the master, afterwards made auditor, material findings by the master and auditor, and rulings by the trial judge, *Morton*, J., are described in the opinion. The judge ordered judgment for the plaintiff in the sum of $2,285.65, and the defendants alleged exceptions.

The case was submitted on briefs.

*H. C. Dunbar*, for the defendants.

*H. F. Hurlburt, Jr.*, & *G. W. Phelps*, for the plaintiff.

CROSBY, J. This is an action of contract to recover damages for the breach of an alleged agreement by the defendants to deliver to the plaintiff certain second hand refrigerating machinery. The proceeding was originally begun by a bill in equity for specific performance of the contract and was referred to a master to report the facts. After the report had been filed, the court, by agreement of the

parties, permitted the plaintiff to amend its suit in equity into an action at law and ordered that the master's report be treated as an auditor's report in an action at law, and that all the findings of fact contained in the report as amended into an auditor's report be treated as final, the same person who heard the case as master to be appointed auditor to hear the evidence on the question of damages and "to report his findings of fact and rulings of law thereon to the court, and that all findings of fact on the question of damage as well as on the question of liability by the auditor be taken as final." After the auditor had filed his report, the defendants moved that it be recommitted for the reasons in substance (1) that no contract was shown to have been entered into between the parties; (2) that it was not found as requested by the defendants that no memorandum of sale was made as required by the statute of frauds; (3) that it was not found in accordance with the defendants' request that "no option was in force in favor of the plaintiff on January 10, 1924, or any time subsequent thereto"; and (4) that the auditor admitted inadmissible and prejudicial evidence subject to the defendants' exception. The defendants also requested the court to rule that there was no sufficient memorandum of a contract as required by the statute of frauds. The motion to recommit the report and the request were denied, and the defendants excepted. The court allowed the plaintiff's motion to confirm the auditor's report, and ordered judgment to be entered for the plaintiff.

During the entire period of the negotiations between the parties (which were principally by letters and telegrams) the plaintiff was represented by one Kehoe, its general manager, and the defendants by one Williams, one of the defendant trustees. The plaintiff, by letter dated June 28, 1923, offered to purchase the machinery in question and pay therefor $13,500. This offer was not accepted. Afterwards the defendants withdrew the machines from the market and so notified the plaintiff. No further communication between the parties respecting the sale of the machines appears to have been had until November 3, 1923, when the plaintiff wrote to the defendants stating in substance that it could

offer a better price therefor. In reply, the defendants on November 6, 1923, requested the plaintiff to inform them what price it would pay. On November 14, Kehoe by long distance telephone asked Williams for an option on the machines at a price of $14,000; and the next day wired Williams as follows: "Please confirm option granted by telephone." No immediate reply was made to this telegram, but on November 17 Williams telegraphed "Letter on way today," and in his letter of the same date inquired of Kehoe if under certain conditions stated "would it be possible for you to raise the offer to us to $15,000.00." On November 23 Williams wired Kehoe that he could have ten days' extension for his decision. Kehoe in reply on November 24 wrote the defendants in part as follows: "I understand by this that you are extending my option on these machines for ten days from November 23d, on the basis of $14,000.00 where is and as is, but that in the event of the Massachusetts Chocolate completing their purchase, the price would be $15,000.00 where is and as is." On December 4 Kehoe wired Williams requesting him to "Wire option Wednesday ten days . . . ." In reply on December 8 Williams wired Kehoe, "Option at fourteen thousand on ice machine until December eighteen." There was no further communication between the parties until December 22.

During this interval Kehoe was in the west on a business trip and was having negotiations with the Northwestern Ice and Cold Storage Company for the sale to it of the machines in question. On December 24 he wrote Williams, "Wire us an option until the 15th of January, which will give them [the Cold Storage Company] plenty of time to make the inspection and conclude negotiations." On the same day and before receiving this letter Williams wrote the plaintiff that the defendants could not extend the option on the ice machines any longer as they had received several inquiries from other parties and would have to sell for the highest offer received. On December 26 Kehoe wired Williams in part as follows: "In view of your inability to extend option have secured approval from my people to deal and can leave for Boston tonight or tomorrow. Answer"; and

Williams wired back "Will be able to see you December twenty seven or twenty eighth."

After receipt of this telegram Kehoe wrote Williams that he was obliged to go to Virginia and requested that the matter be held "in abeyance until Saturday or Sunday," and that he be wired if such delay would be allowed. On December 27 Williams replied as follows: "Must have sale of ice machines settled by the twenty ninth." Upon receipt of this telegram Kehoe replied that he was leaving that night for Richmond, Virginia, and that unless he could get an early train there on Friday he would not be able to reach Boston before two o'clock on Saturday. He arrived in New York too late to be in Boston on Saturday, December 29. On Monday, December 31, he called Williams by long distance telephone and told him that the directors of the plaintiff had authorized him to exercise the option and purchase the machines at the price named, to wit, $14,000, and asked Williams if it would be satisfactory "to have a deposit paid on account of the purchase price and the balance pro rata, before each machine was removed from the premises. Mr. Williams replied that such an arrangement would be satisfactory and suggested that $1,000 be paid as a deposit to be applied on account of the purchase price. Mr. Kehoe replied that this arrangement would be satisfactory to him, but told Mr. Williams that his (Mr. Kehoe's) brother-in-law . . . was very ill in a hospital and . . . that . . . it was impossible for Mr. Kehoe to get over to Boston for a few days. Mr. Williams made no objection to this delay but told Mr. Kehoe to write him confirming this deal as to manner of payment." On January 1, 1924, Kehoe wrote Williams in part as follows: "After talking with you on telephone yesterday, it occurred to me that the only thing I could confirm would be to pay any reasonable deposit and agree to pay balance pro-rata before removal of each machine in a period of 60 to 75 days — and with the understanding there would be no damage to building." Williams made no reply to this letter. Kehoe's brother-in-law died on January 4, and on the following day the plaintiff notified the defendant to that effect. On January 8 Kehoe wrote Williams requesting the

latter to wire him and he would advise Williams of his arrival in Boston. On January 9 Williams wrote in reply as follows: "This is to inform you that the writer will see you any time on Friday, Jan. the 11th, relative to machines at the Miller Candy plant."

The auditor found "that at the time Mr. Williams wrote this letter he understood and he intended by his letter to have Mr. Kehoe understand that he would expect Mr. Kehoe to come to Boston on the 11th, prepared to pay a deposit of $1,000 as previously discussed, and conclude arrangements for dismantling and removal of the machines." The auditor further found that on Thursday, January 10, Kehoe attended court at White Plains, New York, as a witness and was obliged to be there the following day if called by telephone. On January 10 Kehoe wrote Williams in substance that he was held in New York over night and over Friday on a court matter. He also wrote as follows: "Inasmuch as there have been so many postponements due to delays on my part, thought it best to send you the enclosed check for $500.00 as an evidence of good faith, in case I should not be able to get away on a late train tonight. If I should not get there, I will probably talk with you on the telephone with the view of possibly handling the matter in this way." The auditor found that Kehoe enclosed with this letter a check of the plaintiff for $500 payable to A. K. Williams, trustee; that the letter and check were received on January 11; that on the afternoon of the same day Kehoe called Williams by telephone and asked him if he had received the letter and check; that Williams replied that he had; that Kehoe asked Williams if the amount of deposit which he had sent was satisfactory and offered to send more if $500 was not enough; that Williams replied that Kehoe "need not send over any more money and then said, 'Can you come over Monday?' Mr. Kehoe replied, 'Why don't we make it a day which will be convenient for both? I can come Tuesday.'" The auditor found that Williams understood and intended Kehoe to understand that he expected Kehoe to be in Boston on Tuesday, January 15, prepared to pay the balance of the

$1,000 first payment and to conclude arrangements for the dismantling and removing the machines.

There is in the record certain correspondence between the plaintiff and the Northwestern Ice and Cold Storage Company and between that company and the defendants, which it is not necessary to refer to at this time.   It appears, however, that the defendants on January 12 sold the ice machines and certain coils and apparatus to the ice company for $16,000 out of which sum the defendants agreed to pay $1,000 to another party.   On the same day they wrote the plaintiff and enclosed the check for $500 sent by the plaintiff as a deposit on the contract for the purchase of the machines.

The auditor found that Kehoe came to Boston on the morning of January 15 and saw Williams, who told him the machines had been sold; that Kehoe was prepared to pay $500 more on account of the purchase price and arrange for the removal of the machines.   Both parties agree that the machines were to be paid for before removal from the premises, and at the hearings no question was raised by the defendants as to the ability of the plaintiff to pay the purchase price.

It could have been found from the correspondence and the reasonable inferences to be drawn therefrom that a completed contract was entered into between the parties under which the plaintiff agreed to purchase and the defendants to sell the machinery for the sum of $14,000; and that the time for the carrying out of the terms of the contract was mutually understood to be January 15, 1924.   It also could have been found that the plaintiff was able, ready and willing to carry out the contract on the date named and that the defendants refused to do so and had previously sold the property to another company.   A finding was warranted not only that a contract had been entered into between the parties for the purchase and sale of the machines, but that the letters and telegrams offered in evidence constituted a sufficient memorandum in writing required by the statute of frauds to make an enforceable contract.   *Williams* v. *Smith,* 161 Mass. 248.   *Lee* v. *Butler,* 167 Mass. 426.   *Nickerson* v, *Weld,* 204 Mass. 346.

Apart from the question, whether there was a sufficient memorandum in writing to satisfy the statute of frauds, the evidence warranted a finding that the $500 paid by the plaintiff was given in part payment of the purchase price. *Howe* v. *Hayward,* 108 Mass. 54. Williston on Sales, 97. Upon such a finding no note or memorandum in writing of the contract signed by the defendants or their agents provided for in G. L. c. 106, § 6 (1) was required. *Antonacopoulos* v. *Arax Grocery Co. Inc.* 234 Mass. 125. The part payment by check was valid if, as appears, it was accepted by the seller. *Taylor* v. *Wilson,* 11 Met. 44. *Ansin* v. *Mutual Life Ins. Co. of New York,* 241 Mass. 107, 111. Although the check was afterwards returned, the only reason given by the defendants for so returning it was that the option given the plaintiff had previously expired.

It is a general rule that a motion to recommit an auditor's report rests in the judicial discretion of the court and an exception to its decision will not be sustained unless such discretion is abused. Where, however, as in the case at bar, the findings of the auditor are agreed to be final, the general rule is not applicable; in such cases the auditor's rulings on the admission of evidence are reviewable on a motion to recommit for alleged errors. If the motion is denied, the party aggrieved may have the order reversed by this court. *Pettey* v. *Benoit,* 193 Mass. 233, 236.

The exceptions relating to the admission of certain evidence taken during the hearing before the master, and before the suit was amended into an action at law, may be disposed of briefly. None of these exceptions has been argued except those relating to evidence of negotiations between the defendants and the Northwestern Ice and Cold Storage Company to whom they finally sold the machines. The plaintiff contends that this evidence was admissible as tending to show that the defendants entered into negotiations with a prospective customer of the plaintiff for the purpose of getting a higher price for the machines than that for which they had agreed to sell them to the plaintiff. If we assume that the evidence of these negotiations and the telegram sent by the defendants to the ice company

on January 10, 1924, were wrongly admitted, we are satisfied that the rights of the defendants were not thereby prejudiced. The other exceptions to the admission of evidence have not been argued, and we treat them as waived.

The motion to recommit the report and the request for a ruling that there was no sufficient memorandum of a contract as required by the statute of frauds were rightly denied. The exceptions to the admission of evidence cannot be sustained.    The entry must be

*Exceptions overruled.*