SIDNEY SACKS *vs.* MARTIN EQUIPMENT COMPANY.

Suffolk.   October 6, 1955. — December 1, 1955.

Present:   QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Agency*, Scope of authority or employment. *Frauds, Statute of. Pleading, Civil*, Answer. *Practice, Civil*, Amendment.

In an action for breach of a contract to sell a machine to the plaintiff, an answer setting up the statute of frauds, G. L. (Ter. Ed.) c. 106, § 6, only with respect to lack of a writing was insufficient to open to the defendant the point that nothing had been given in earnest to bind the contract or in part payment. [275–276]

A finding that a regional sales representative of a corporation dealing in certain machinery had authority to make in its behalf a contract to sell one of its machines was warranted by evidence that its general sales manager had stated to the buyer under such contract that the regional sales representative had authority to make it. [279–280]

The evidence did not warrant a finding that a sales representative of a corporation dealing in dry cleaning machines, who made a contract by telephone with one in a distant city to sell him one of the machines, had authority to receive in behalf of the corporation a payment from the buyer in earnest to bind the contract or in part payment within the statute of frauds, G. L. (Ter. Ed.) c. 106, § 6. [280]

Where the direction of a verdict for the defendant was correct but for a technical insufficiency of the answer in pleading a defence decisive of the case, it was ordered by this court that the exceptions of the plaintiff be overruled if the Superior Court should find that the defence had been fully and fairly tried and should allow the defendant to amend the answer so as to set up the defence properly; otherwise that the exceptions be sustained.   [281]

CONTRACT OR TORT.   Writ in the Superior Court dated April 22, 1950.

The action was tried before *Beaudreau,* J.

*Benjamin Goldman,* for the plaintiff.

*Harold S. White,* for the defendant.

WILKINS, J.   This is an action of contract or tort in two counts.   The first count is for breach of an agreement to deliver a dry cleaning unit which the plaintiff purchased from the defendant.   The second count is for inducing one Murphy to break a contract with the plaintiff to buy the unit referred to in the first count.   The answer contains a general denial and sets up the statute of frauds.   The trial judge directed a verdict for the defendant on each count.   There are exceptions to that action of the judge and to rulings on evidence.

The plaintiff's case on the first count seems to be this. He made an oral contract with the defendant, acting through an agent whose authority is in dispute, to buy the dry cleaning unit for $3,500 and gave a check for $1,000 to bind the contract or in part payment.   The defendant's answer setting up the statute of frauds merely is that "the contract or agreement upon which the plaintiff's action is based is not in writing and signed by the defendant or some person lawfully authorized by the defendant as provided by General Laws."   The intended reference is to G. L. (Ter. Ed.) c. 106, § 6, which provides that "A contract to sell or a sale of any goods . . . shall not be enforceable by action unless [1] the buyer shall accept part of the goods . . . or [2] give something in earnest to bind the contract, or in part payment, or [3] unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."   The plaintiff con-

tends that this answer setting up only part of the defence, namely the lack of a writing, is insufficient to allow the defendant to raise the issue that there was no giving of anything in earnest to bind the contract or in part payment. We think that this contention must be upheld. *Dangelo* v. *Farina*, 310 Mass. 758, 761.

The judge, however, directed a verdict in the defendant's favor. This action could have been on the ground that the defendant was not bound because of lack of authority on the part of its agent who purported to make the sale. Or the judge could have thought that, if there was a contract, there was no compliance with the statute of frauds. There admittedly was no writing signed by the defendant or any person on its behalf. If we assume that there could be a part delivery of one dry cleaning unit, there nevertheless was no acceptance of part of the goods, because the refusal of the defendant to make delivery lies at the foundation of the plaintiff's case. The real question under the statute is whether the plaintiff did "give something in earnest to bind the contract, or in part payment."

At this point it is convenient to state facts the jury could have found. In October, 1949, the plaintiff, who was in the dry cleaning business in Boston, telephoned Henry Wallens in New York city. The latter was "the eastern sales representative for the Martin Equipment Corporation which includes Massachusetts." Wallens told him that a new Martin machine would cost the plaintiff $5,800, and that there was a trade-in value of $3,800 on the plaintiff's old machine. Later the plaintiff again telephoned Henry Wallens, told him that the plaintiff had a customer for his old machine, and asked "what kind of a deal Mr. Wallens could give the plaintiff to sell the plaintiff a new machine without the trade-in." Wallens replied that he would sell the plaintiff a new machine for $3,500 without installation or service but with a guaranty against defective parts for one year. On October 14 the plaintiff telephoned Henry Wallens a third time. The plaintiff said that he was going to sell a new Martin dry cleaning unit (along with other equipment not

made by the defendant) to a Mr. and Mrs. Murphy of South Boston for $9,000; that he was going to make the installation and the buyers were to make a deposit of $2,500 on Monday. Wallens replied, "That's fine. I will go along with my bargain with you. I will sell you the machine for $3,500 as arranged. Incidentally, Peter Pasco is in the office now, who is our general sales manager for the country. He lives in Cambridge, Mass. He is due home tomorrow. That will be Saturday, and he will get in touch with you and make arrangements to see the Murphys." The plaintiff said he would make a net profit of over $3,000.

On October 16 the plaintiff talked with Pasco in South Boston, and told Pasco "of the whole sale that was said Friday," saying that "the plaintiff was selling the Murphys the deal for $9,000" including the Martin machine. Pasco said, "We are selling you this machine for $3,500, but we will not install it, nor will we service it, but we will guarantee it against defective parts for one year." At a meeting with the Murphys in their store Pasco showed pictures of the machine, extolled its virtues, and made suggestions as to the layout for the machines which the plaintiff was to sell to the Murphys. Later Pasco asked the plaintiff, "Is the Lewis National in this deal?" The plaintiff answered, "Not that I know of." The Lewis National Corporation was an authorized dealer of the defendant in Boston, but the plaintiff did not know this. At some time on this day Pasco told the plaintiff that Henry Wallens did have the right to sell the plaintiff a machine.

On the following day, October 17, Mrs. Murphy and the plaintiff concluded an agreement which was signed by the plaintiff, who received a deposit of $2,500. That afternoon the plaintiff by telephone informed Henry Wallens of that transaction, and said that he was ready to negotiate and would now send Wallens $1,000 as a deposit or binder and would be in New York on October 19 to pay Wallens the balance of $2,500. Wallens agreed. The plaintiff on October 17 sent Wallens a check for $1,000 with a letter. The check was payable to the order of the defendant, drawn on

a Milton bank, and signed by the plaintiff. The letter was not admitted in evidence, but it was addressed to the defendant at 163 West 23rd Street, New York, which is where the plaintiff met Henry Wallens on October 19. On October 18 the plaintiff had received a telegram signed, "Pasco Martin Equip. Corp. Buffalo N. Y." stating, "Your plan to resell unit is misrepresentation of facts and jeopardizes our position with accredited jobber representatives. Any order you wish to place with us will be for full list price F. O. B. Buffalo, N. Y."

The place at 163 West 23rd Street where the plaintiff saw Henry Wallens was a large store and a display room where there were machines on the floor for sale. The name "Martin Equipment Corporation" was on the door or window. Wallens told the plaintiff that he had received the check for $1,000 the day before; that Pasco did not want him to sell the machine to the plaintiff; but that he thought that his brother, William Wallens, the executive vice-president, who was on his way back from Europe, could be won over. The plaintiff was prepared to pay the balance of $2,500.

The plaintiff returned to Boston, and received a letter dated October 21 on the defendant's letterhead from a Buffalo address, signed "Martin Equipment Corporation. G. F. Youngman, Secretary-Treasurer," reading as follows: "Enclosed, you will find your check in the amount of $1,000, dated October 17, 1949. We regret very much that we can not accept sales of our equipment by you inasmuch as we do have a dealer covering the Boston area. You, no doubt, thoroughly understand the position we are taking to protect our accredited jobbers from individuals who are not authorized to act for us. If you were an authorized dealer of our equipment, you would receive the same consideration and protection that we now give our representatives."

On October 24 the plaintiff telephoned and spoke with William Wallens in Buffalo. As a result, he spoke with Pasco on the same telephone. Pasco said that he advised the Murphys not to buy any equipment from the plaintiff

because the plaintiff was not a recognized dealer. The plaintiff reminded Pasco he was at the Murphy house, saying, "Why didn't you stop the deal there? Why did you let me go through with it? You knew all the figures. You knew all the facts." Pasco said, "Well, I'm sorry that's the way it is." Later the plaintiff returned the $2,500 deposit to Mrs. Murphy.

1. There are certain questions of evidence argued by the plaintiff which disclose no error. The letter of October 17, 1949, from the plaintiff to the defendant at the New York salesroom where he visited Henry Wallens was excluded. The facts about the check were in evidence. Nothing of substance would have been added by the word "binder." As hereinafter appears, Henry Wallens was not an agent to receive payment. The exclusion of the defendant's letter to Lewis National Corporation, the contract between the defendant and Murphy, and the question by plaintiff's counsel to Pasco as to whether the defendant gave Murphy a discount shows no reversible error. These rulings seem chiefly to relate to the second count. It is plain that the plaintiff cannot recover on his second count if he had no enforceable contract to buy the dry cleaning unit. We do not pause to inquire why, if the plaintiff can recover on the first count, he cannot recover as damages thereunder all that he seeks on the second count.

2. We think that the jury could have found that Henry Wallens was authorized to make the contract upon the plaintiff's testimony that Pasco, the general sales manager, had said that Wallens had the right to sell a machine to the plaintiff. This statement was by an agent as to the authority of another agent which could be found within his power as agent to make. Restatement: Agency, § 285, comment b. In an action between the principal and a third person, statements of an agent to a third person are admissible in evidence against the principal to prove the truth of facts asserted in them as though made by the principal, if the agent was authorized to make the statement or was authorized to make, on the principal's behalf, true statements

concerning the subject matter. *Garfield* v. *Peerless Motor Car Co.* 189 Mass. 395, 404–405. *United States* v. *United Shoe Machinery Corp.* 89 Fed. Sup. 349, 353 (D. C. Mass.). Restatement: Agency, § 286.

3. We next inquire whether there was evidence of the giving of something in earnest to bind the contract, or in part payment. We pass by the question whether the check could be found to be either. *Technical Economist Corp.* v. *Moors,* 255 Mass. 591, 598. *Dutton* v. *Bennett,* 256 Mass. 397, 402. *S. C.* 262 Mass. 39, 40. 8 A. L. R. (2d) 251. Compare *Antonacopoulos* v. *Arax Grocery Co. Inc.* 234 Mass. 125. It has been held that an agent who solicits orders and sends them to his principal to be filled has no implied authority to receive payment for the goods. *Clark* v. *Murphy,* 164 Mass. 490, 491–492. *Boice-Perrine Co.* v. *Kelley,* 243 Mass. 327, 329, 330. In a case not involving a selling agent, we have said: "Unless otherwise agreed, authority to receive payment is inferred from authority to conduct a transaction if the receipt of payment is incidental to such a transaction, usually accompanies it, or is a reasonably necessary means for accomplishing it." *Pampegian* v. *Richmond,* 319 Mass. 216, 218–219, quoting from Restatement: Agency, § 71, of which comment a in part is, "Agents employed to sell have authority to receive payment under the conditions stated in § 62." Section 62 (2) reads in part: ". . . authority to sell chattels . . . does not include authority to receive the purchase price unless the agent has been entrusted with them or with the documents representing them." Here there was no evidence that Henry Wallens was ever authorized to receive the purchase price or a deposit on account of the purchase price of any machines. There is no suggestion that the dry cleaning unit contemplated in the sale to the plaintiff was one of the machines in the New York salesroom.

It is plain that if the question of the statute of frauds was open, there was no compliance with it. The case of *Winstanley* v. *Chapman,* 325 Mass. 130, has no present application. That was a suit in equity upon an oral contract to sell

real estate where there had been part performance. See *Montuori* v. *Bailen*, 290 Mass. 72, 75; *Cousbelis* v. *Alexander*, 315 Mass. 729, 732; Williston, Contracts (Rev. ed.) § 494; 59 A. L. R. 1305. In the circumstances the ruling of the judge ought not to be reversed on a technical point of pleading. *New England Foundation Co. Inc.* v. *Elliott & Watrous, Inc.* 306 Mass. 177, 181.

The rescript will provide that if the Superior Court shall find that the issue of the statute of frauds was fully and fairly tried, and, within thirty days after rescript, shall allow the defendant to amend its answer so as to set up the statute in proper form, in that event the exceptions are to be overruled; otherwise the exceptions are to be sustained. *Les* v. *Alibozek*, 269 Mass. 153, 160. *Gagnon* v. *Ainsworth*, 283 Mass. 488, 491. *Westfield Savings Bank* v. *Leahey*, 291 Mass. 473, 476–477. *Seder* v. *Kozlowski*, 304 Mass. 367, 370–371.

*So ordered.*