Donohue, J.
The plaintiff, Karen Barnard (“Barnard”), brought this action against the defendant, Linwood Erskine, Jr. (“Erskine”), alleging interference with an advantageous relationship, improper inducement to breach a contract, malicious interference with the plaintiffs right to receive or inherit a gift, and intentional or negligent misrepresentation of the law to Marion Torrey (“Torrey").[1] The action arises out of Erskine’s legal representation of Torrey and his refusal, as executor of Torrey’s estate, to compensate Barnard, out of the Estate’s assets, for alleged services provided by her to Torrey during Torrey’s lifetime. Erskine now moves for summary judgment on all counts of the complaint asserted against him individually (Counts III through VI).
After a hearing on defendant Erskine’s motion for summary judgment, and upon consideration of the memoranda and arguments of counsel, the court hereby ALLOWS Erskine’s motion for summary judgment as to Counts III through VI of the complaint. As no other counts in the complaint pertain to Erskine individually, the action against him in his individual capacity shall be dismissed. The only remaining issues *158 for trial are Counts I and II against Erskine as executor of the Estate.
BACKGROUND
The defendant Linwood Erskine, an attorney, represented Marion Torrey prior to her death on January 17, 1995. At the time of her death, Torrey was 103 years old, blind, and confined to a wheelchair.
According to the plaintiff Karen Barnard, she met Torrey in the spring of 1980. They developed a friendship between 1980 and the time ofTorrey’s death in 1995. In December of 1993, Torrey broke her hip and was hospitalized. Thereafter, she was admitted to a nursing home where, according to Barnard, Torrey’s general health deteriorated. Barnard contends that Torrey became despondent and expressed a desire to return to her home at 19 Westland Street in Worcester.
Torrey discharged herself from the nursing home in April of 1994. She returned to the home she owned on Westland Street and remained there until her death. Barnard also moved into Torrey’s home and she too remained there until Torrey’s death. According to Barnard, she and Torrey agreed that Barnard would live in the home and provide the necessary services to Torrey so as to allow her to remain in her home and not return to the nursing home. By Barnard’s calculations, from March of 1994 until January 17, 1995, she “provided hours of extensive and varied services” to Torrey at her request: “housecleaning, errands and odd jobs, and generally maintaining the home so [Torrey] could live at home.” Barnard also asserts that she was “available virtually 24 hours a day to provide personal care to [Torrey].”
In exchange for these services, Barnard asserts that Torrey wanted to convey her 19 Westland Street home to Barnard. Erskine, Torrey’s attorney since well before 1980, discussed with Torrey this possibility of transferring her home to Barnard on a few occasions, the last of which was three days before Torrey’s death, January 14, 1995. When Erskine arrived at the home, Torrey was in bed and,. according to Erskine, “her speech was difficult to understand.” Barnard was also present. Torrey and Erskine discussed transferring the home to Barnard, a course of action which Erskine advised against. Barnard asserts that Torrey directed Erskine to prepare a deed conveying the property to Barnard, rather than merely seeking advise on the subject. Erskine, however, expressed concern to Torrey that an outright conveyance to Barnard prior to Torrey’s death could jeopardize Torrey’s wishes to remain in the home; he feared that Barnard would move Torrey to a nursing home once she received the deed to the house. Furthermore, Erskine asserts that he was concerned about the possibility that Torrey could disqualify herself from receiving public medical assistance if she needed medical assistance within thirty months of a transfer of her home. Erskine also advised against a conveyance of the property with a reserved life estate in Torrey, as he was concerned that Barnard’s quality of care or services to Torrey could deteriorate. He also expressed concern regarding whether the transfer was the result ofTorrey’s wishes or Barnard’s influence over her. As a result of these concerns, Erskine told Torrey that she would have to go to another attorney if she wanted to continue with the idea of a conveyance.
Torrey did not seek the services of another attorney. She died three days after her last meeting with Erskine, leaving a will that was executed by Torrey on October 19, 1994. At the time of her death, Torrey had less than $100,000.00 in assets. Barnard was given the first opportunity to purchase the 19 Westland Street home under the terms of the will. Additionally, the home, or the proceeds from its sale, would pass with the residue of Torrey’s estate: fifty percent (50%) passed to charities, twenty five percent (25%) to Ruth Chiras, and twenty five percent (25%) to Nancy Hancock. Barnard declined to exercise her option to purchase the home under the will. It was offered to Barnard at a price of $70,500.00. It subsequently sold for $89,000.00.
DISCUSSION
This Court grants summary judgment where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law based upon review of the summary judgment record. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and “that the summary judgment record entitles the moving party to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The nonmoving party cannot defeat the motion for summary judgment by resting on its “pleadings and mere assertions of disputed facts ...” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
I. INTERFERENCE WITH ADVANTAGEOUS OR BENEFICIAL RELATIONSHIP
(Count III)
In an action for tortious interference with an advantageous relationship, the plaintiff bears the burden of establishing (1) a business relationship or contemplated contract of economic benefit, (2) the defendant’s knowledge of the relationship, (3) the defendant’s intentional and malicious interference with it, and (4) the plaintiffs loss of advantage directly resulting from the defendant’s conduct. Comey v. Hill, 387 Mass. 11, *159 19 (1982). The element of “malice” has been abandoned and replaced by the term “improper.” United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 815-16 (1990). Thus, under recent law, the plaintiff must establish that “the defendant’s interference, in addition to being intentional, was improper in motive or means . . .” G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272 (1991). Without an intent to interfere on the part of the defendant, there can be no liability because negligent interference is not actionable. Spencer Cos. v. Chase Manhattan Bank, N.A., 81 BR 194 (D. Mass. 1987). Furthermore, the defendant’s knowledge of the existence of a contract or contemplated contract with a third party and the fact that his actions will render the performance of such impossible does not automatically render such actions tortious. Arasery, Inc. v. Bay State Harness Horse Racing a Breeding Ass’n, 437 F.Sup. 1083, 1094 (D. Mass. 1987).
In support of his motion for summary judgment, Erskine asserts that Barnard will be unable to prove a necessary element of this tort, namely that Erskine acted with an improper motive or in improper means. He contends that his actions were appropriate under the circumstances, considering Torrey’s age, potential need for future medical assistance, the fact thatTorrey had less than $100,000.00 in assets at the time of her death. Erskine asserts that to prepare the deed conveying the property to Barnard would have been, in his opinion, contrary to Torrey’s best interests. He alleges that, as Barnard will be unable to produce any evidence supporting an improper motive or means, he is entitled to judgment on Count III of the complaint.[2]
Barnard asserts, however, that an improper motive or means is shown by Erskine’s actions in refusing to prepare the deed as Torrey directed. Pointing to a case from the Sixth Circuit, Firestone v. Galbreath, 25 F.3d 323 (1994), Barnard alleges that conduct which interferes with a person’s expectancy interest is actionable, and urges this court to adopt the rationale of the Sixth Circuit. She alleges that Erskine was acting in his own self-interest, and not in the interests of his client (Torrey) as he should have, when he refused to prepare the deed.
Generally, in cases where motive or intent is at issue, summary judgment is disfavored. Pederson, 404 Mass. at 17; Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). That is not to say, however, that in such cases summary judgment is always inappropriate. McKenzie v. Brigham & Women’s Hosp., 405 Mass. 432, 438 (1989). Where the plaintiff has no reasonable expectation of proving the requisite intent, summary judgment is appropriate. In making a determination as to whether the defendant had an improper motive or used an improper means, courts can consider, among other factors, the relation between the parties. In this case, Erskine had been Torrey’s attorney for over fifteen years. He knew her long before she met Barnard, and he had a professional relationship which withstood the test of time. As her attorney, Erskine had a fiduciary duty to Torrey which included a professional assessment of what was in her best interests. A breach of that duty could result in an action by Torrey or her estate against Erskine.
Although Barnard alleges an improper motive on the part of Erskine, the evidence before me on the summary judgment record clearly does not support any such impropriety, nor does it appear that the plaintiff will able to introduce such evidence at trial. In fact, on the record before me, the only motive or intent on the part of Erskine that can be shown is for the well-being of his client Torrey. Barnard must present evidence sufficient to raise a genuine issue of material fact that Erskine’s interference, to the extent that any in fact existed, was done with an improper motive or by improper means. G.S. Enterprises, 410 Mass. at 272. As this essential element is lacking, summary judgment is appropriate in favor of Erskine as to Count III of the complaint.
II. IMPROPER INDUCEMENT TO BREACH CONTRACT (Count IV)
An individual may maintain an action for improper inducement to breach a contract if the defendant induces another person to breach a contract with the plaintiff without justification to do so. Comerford v. Meier, 302 Mass. 398, 404 (1939). See also Keene Lumber Co. v. Leventhal, 165 F.2d 815, 822 (1st. Cir. 1948). There is no action, however, absent a showing by the plaintiff that a breach has in fact occurred. See Comerford, 302 Mass. at 405. Thus, in order to prevail on a claim for improper inducement to breach a contract, the plaintiff must be able to show that a contract existed and that it was breached. See Id.; Sacks v. Martin Equipment Co., 333 Mass. 274, 279 (1955).
Barnard’s mere assertion that a contract existed between her and Torrey is not sufficient to defeat Erskine’s motion for summary judgment. As Erskine correctly points out, Barnard is unable to show that a valid contract between her and Torrey existed concerning the conveyance of Torrey’s property at 19 Westland Street.[3] Moreover, even if I believed she could show the existence of the contract, it is well-settled that under the Statute of Frauds no action may be maintained upon a contract for the sale of land, or other interest therein, unless the agreement upon which the action is brought is in writing and signed by the parly to be charged. G.L.c. 259, §1. As a matter of law, the Statute of Frauds precludes Barnard’s action for two reasons: first, no contract, agreement, or other memorandum exists detailing the agreement Barnard alleges existed; second, the “party to be charged” in Barnard’s complaint is Erskine who clearly did not have an agreement regarding the conveyance of 19 Westland Avenue nor did he sign the December 7, 1994 letter written by Barnard.
*160 Barnard asserts that the determination of whether a contract sufficient under the Statute of Frauds exists is a question of fact for the juiy to decide. Even if Barnard could prove the existence of a contract with Torrey, however, either by the letter or some other means, she must be able to prove that Erskine improperly induced Torrey to breach that contract without any justification in order to prevail on this count against Erskine. As with the count for interference with an advantageous or beneficial relationship, Barnard will be unable to prove at trial any impropriety by Erskine; her mere assertions of impropriety are unsupported by the record and she can offer no evidence that such proof would be forthcoming at trial. Moreover, Erskine’s fiduciary duty to Torrey provides justification for his actions in ensuring that her best interests were met. Erskine is therefore entitled to summary judgment on Count IV of the complaint.
III. MALICIOUS INTERFERENCE WITH PLAINTIFF’S RIGHT TO INHERIT OR RECEIVE A GIFT (Count V)
In order for Barnard to prevail on Count V of her complaint, she must be able to prove (1) the value of the property which would have been left, (2) that Erskine intentionally interfered with the giving or leaving of the property to her, and (3) that Erskine used unlawful means in interfering. Hegarty v. Hegarty, 52 F.Sup. 296, 298-99 (D. Mass. 1943). If the plaintiff cannot show that the defendant’s actions included duress, fraud, or undue influence, then no action can lie, as it is lawful and proper for anyone to give reasons as to why a person should not be given property. Id. at 300 and n.2. In the present case, as has been discussed, Erskine had a duty to protect the interests of his client, Torrey. Barnard has not alleged, nor can she on the facts of this case, that Erskine used fraud, duress, or undue influence to interfere with Torrey’s leaving of property. The only thing that Barnard does allege is that Erskine refused to do as an elderly, bedridden, blind client instructed him to do, notwithstanding that as her attorney, Erskine had serious reservations about the propriety of Torrey’s actions. Not only does this not rise to duress, undue influence, or fraud as a matter of law, but I also conclude that if Erskine had done what Torrey requested, he would have subjected himself to a potential legal malpractice action for not ensuring Torrey’s best interests were met. As Barnard can offer no evidence as to any unlawful means by Erskine, summary judgment is appropriate in his favor as to Count V.[4]
IV. INTENTIONAL OR NEGLIGENT MISREPRESENTATION OF THE LAW TO MARION TORREY (Count VI)
A misrepresentation as to a matter of law is not necessarily actionable. See Busiere v. Reilly, 189 Mass. 518, 521 (1905). In order to recover for any negligence action, the plaintiff must prove, among other elements, that the defendant owed a duty of care to the plaintiff that was breached.[5] The circumstances of this case raise an issue of whether Erskine owed a duty of care to Barnard who was not his client. It is generally recognized that “an attorney owes a duty to non-clients who the attorney knows will rely on the services rendered.” McCarthy v. Landry, 42 Mass.App.Ct. 488, 490 (1997), quoting Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 524, cert. denied 493 U.S. 894 (1989). No duty of reasonable care will be imposed, however, “if such an independent duty would potentially conflict with the duty the attorney owes to his or her client.” Lamare v. Basbanes, 418 Mass. 274, 276 (1994). In the circumstances of this case, I conclude that to hold Erskine to a duty of care to Barnard would be to create a conflict in the duty he owed to Torrey. See Symmons v. O’Keeffe, 419 Mass. 288, 300 (1995) (holding that “[i]n preparing an estate plan and distributing property, either through a will or through inter vivos trusts, attorneys can have only one client to whom they owe a duty of undivided loyalty").
Although the conveyance in the present case involved a lifetime transfer, I conclude, as did Erskine, that to have completed that conveyance would have been in direct contravention to Torrey’s best interests. Barnard and Torrey had differing and conflicting interests: Barnard’s was to receive Torrey’s house in exchange for her services rendered and Torrey’s was to remain at home instead of going to a hospital. As Erskine correctly pointed out to Torrey, if he had prepared the deed conveying the house to Barnard, Torrey’s interests would no longer be capable of protection. As there were conflicting interests in this case, I conclude that the only duty of care Erskine owed was to his client Torrey. Thus, as Barnard cannot show that Erskine owed her a duty of care, she fails to meet an essential element of her cause of action, and summary judgment in favor of Erskine on Count VI of the complaint is appropriate.[6]
ORDER
Based upon the foregoing reasons, defendant Erskine’s motion for summary judgment as to Counts III through VI of the complaint is hereby ALLOWED.

 The complaint also alleges two counts (Counts I and II) against Linwood Erskine Jr. as executor of the estate of Marion Torrey (“Estate") not presently before this court on Erskine’s motion for summary judgment.

 Erskine also asserts justification and privilege as an affirmative defense to an action for interference with an advantageous or beneficial relationship. I do not reach this argument, however, as I find Barnard is unable to produce any evidence on one of the elements she must prove and thus summary judgment on that count in favor of Erskine is appropriate.

 Barnard asserts that a letter written by her to Torrey, dated December 7, 1994, is a sufficient memorandum or writing of the agreement between her and Torrey. I disagree. The letter, written by Barnard, is not signed by either her or, more importantly, by Torrey.

 Furthermore, according to the Restatement (Second) of Torts, Barnard would also bear the burden of proving with a degree of reasonableness that the conveyance would have *161 been in effect at the time of Torrey’s death. Restatement (Second) of Torts §774B, cmt. d. Even if Erskine had carried out Torrey’s wishes, based upon the summary judgment record, it appears as though Barnard would be unable to prove that such a conveyance would have been in effect just three days later. Barnard also alleges liability for interference with her right to receive a gift. I note that it appears as though no Massachusetts court has recognized this as a cause of action.

 Barnard alleges that the misrepresentation was made to Torrey. She has not, however, shown how she herself has standing to bring a cause of action, to the extent that one exists, against Erskine for the misrepresentation to someone other than herself.

 Barnard’s count for intentional misrepresentation must also fail. As discussed in footnote 5, supra, Barnard has no standing. Furthermore, even if she could show standing, she is unable as a matter of law to show any misrepresentation as Erskine’s advice did not fail to meet the standard of care to which an attorney is held.