H. H. Brown Shoe Company *vs.* H. C. Brown Company, Inc.

Suffolk.   November 17, 1926. — January 24, 1927.

Present: Rugg, C.J., Braley, Crosby, Pierce, & Sanderson, JJ.

*Bills and Notes*, Consideration.  *Corporation*, Officers and agents, By-laws.  *Agency*, Scope of authority, Ratification.  *Evidence*, Competency.  *Practice, Civil*, Exceptions.

In an action upon a check given by a corporation to a second corporation, a finding that the check was supported by a valid consideration is warranted by evidence tending to show that the businesses of the two corporations were coördinating; that the first corporation within the authority of its charter owned a majority of the common stock of the second corporation but none of its preferred stock; that at the time the check was given, and for some time previously, the second corporation had been losing money and was not able to pay a quarterly dividend on its preferred stock; that thereupon its officers asked the common stockholders to contribute a check post dated six months to replace money to be paid as a quarterly dividend about to be declared; that the checks were given accordingly, among them the check in suit; and that the transaction was important as a means of preserving the credit of the second corporation.

The individual who signed the check above described on behalf of the defendant was the president and a director of the second corporation and was the president, treasurer and a director and the manager of the defendant. The by-laws of the defendant contained no specific provision authorizing him to sign and deliver the check. There were but

two other directors of the defendant, of whom the signing officer's wife was one. There was evidence that the wife left corporate matters to her husband, that the third director knew of his signing and made no objection, and that after the check was executed and delivered the third director said in the presence of the signer that it was perfectly good. *Held*, that

  (1) An inference was warranted that the signer of the defendant's name to the check was given authority to do so by the other directors;

  (2) There was evidence warranting a finding that the act of signing the check was ratified by the other directors.

A receipt for the check above described, signed by the payee corporation and addressed to the signing officer personally, substantially like receipts given other stockholders of the second corporation, was *held* not to have been improperly admitted in evidence and not to have been prejudicial to the defendant.

In the action above described, it was proper to exclude a question, whether the check given by the defendant to the plaintiff was referred to in an audit of the defendant's books.

CONTRACT upon a check of the defendant. Writ in the Municipal Court of the City of Boston dated December 29, 1924.

On removal to the Superior Court, the action was tried before *O'Connell*, J. Material evidence is described in the opinion. At the close of the evidence, the defendant moved that a verdict be ordered in its favor. The motion was denied. The jury found for the plaintiff in the sum of $1,546.80. The defendant alleged exceptions.

*A. G. Sleeper*, (*F. M. Ryder* with him,) for the defendant.

*G. A. Sweetser*, for the plaintiff.

CROSBY, J. This is an action to recover $1,446 and interest and protest fees on a check purported to have been given by the defendant to the plaintiff. The plaintiff was a corporation engaged in the manufacture of shoes. The defendant sold shoes of different makes to retailers, and at the time the check was given owned four thousand shares of the common stock of the plaintiff (which was a majority thereof) but none of the preferred stock. It was agreed at the trial that the defendant by its charter was authorized to invest in and hold this common stock. Henry C. Brown, on December 31, 1923, when the check was given, was president and one of the directors of the plaintiff, and also was president, treasurer, a director, and manager of the defendant.

There was evidence that the plaintiff's officers found that on or about December 31, 1923, the company was losing money, and it was apparent to the directors that it would not be able to pay out of its earnings the quarterly dividend due on January 1, 1924, to its preferred stockholders; that the books of the company showed that, for some time previous to December 31, 1923, there had been a deficit, and it continued to grow larger from that date down to July 1, 1924, the date of the check; that it was agreed by the directors on December 31, 1923, to ask the common stockholders to contribute, each according to his respective holdings, a check dated July 1, 1924, to replace the money to be paid on account of the quarterly preferred dividend, with the understanding that "If it appears at the end of the fiscal year that the earnings of the Company are sufficient so that dividends can be paid from surplus this check is to be returned, otherwise it becomes one of the assets of this Company." A vote was passed by the plaintiff's directors in accordance with this agreement, and at the same time it was voted to pay a dividend on the preferred stock to holders of record on January 1, 1924.

All the common stockholders contributed on the same date checks dated July 1, 1924; these were sufficient to pay the preferred dividend. They represented the proportionate amount of the respective holdings of common stock of the plaintiff by the makers. The check contributed by the defendant is the one on which this action is brought. In consequence of the giving of the checks, the plaintiff voted to pay and paid a quarterly dividend on its preferred stock due January 1, 1924.. The records of the company did not show that this check was given by Brown on behalf of the defendant under any vote of the stockholders or directors of the company. The directors of the defendant at that time were Henry C. Brown, his wife (Louise A. Brown), and Alvah G. Sleeper, who was also the attorney of the defendant.

One Dodge, an officer of the plaintiff, testified that Brown stated to him that he wanted to pay the dividend on the preferred stock; that he had taken the matter up with the directors of the defendant and the only way it could be done

was by the method above described; and that he and his directors approved of it.   This witness further testified that after the check was given Brown said it was good and would be paid.   Other directors of the plaintiff testified in substance that Brown told them before the meeting of December 31, 1923, that for the plaintiff to fail to pay the preferred dividend would hurt the company's standing with the banks and with the preferred stockholders, and that it would affect the plaintiff's credit.   Brown testified that it "was a matter of some moment to both the plaintiff and defendant company whether the preferred dividend was paid January 1, 1924."

Upon the foregoing and other evidence, it could have been found that it was important not only to the plaintiff but to the defendant to preserve the plaintiff's credit.   It is plain that the value of the common stock in the plaintiff company might be of less value if the dividend due  on its preferred stock on January 1, 1924, were passed.   A finding was not unwarranted that the defendant, as a majority stockholder in the plaintiff corporation, was vitally concerned in preserving its interest in the latter company as represented by four thousand shares of its common stock.   Manifestly the giving of the check to be used in the payment of the preferred dividends could have been found to have been so given to protect its own interest.   It follows that in the circumstances here disclosed there was a valid consideration for the check.

It is the contention of the defendant that Brown was without authority to give the check.   He testified that the by-laws of the defendant provided as follows: "The president shall be the chief executive officer, and head of the company.   He shall have the general control and management of its business and affairs, subject, however, to the right of the directors to delegate any specified power.   He shall sign all certificates of stock, bonds, notes or special contracts of the company, and may countersign or approve checks, drafts, promissory notes, bills of exchange.   The treasurer shall have the custody of the funds of the corporation, and shall keep full accounts of receipts and disbursements, and shall render accounts to the president and directors whenever they may require it.   He shall sign all

certificates of stock, drafts and promissory notes. He shall furnish bonds from time to time in such amounts and such sureties as the board of directors may designate and approve."

Although the records of the corporation did not show that authority was given to sign and deliver the check, it appeared that Brown was the president, treasurer, manager, and a director of the defendant. The only other directors at that time were his wife and Sleeper. Brown testified that his wife left matters generally to him, so far as the conduct of the business was concerned. There was evidence that Sleeper knew about the check and made no objection to it; that on or about May 3, 1924, the matter of the check was brought to his attention in the presence of Brown, and Sleeper said it was perfectly good. Brown also testified that on January 21, 1924, there was a stockholders' and directors' meeting and all of the stockholders were present except one, who owned twenty shares of the common stock; that a statement was made of the condition of the business and the transactions of the company for the previous year, and these were discussed in "some detail"; that he was the active man in the business and matters that related to transactions such as the giving of the check, both Sleeper and his (Brown's) wife left to him. There was also evidence that Brown stated to an officer of the plaintiff company that the directors of the defendant were favorable to the payment of the preferred dividend.

Upon the entire evidence and the reasonable inferences to be drawn therefrom, it could have been found that Brown had original authority from the other directors to give the check.

It also could have been found that while there was no express authority by vote of the directors given to Brown, yet by their acts and conduct he was clothed with ostensible authority to contribute toward the payment of the stock dividend, and to give the check in compliance with the agreement. *Parrot* v. *Mexican Central Railway*, 207 Mass. 184. *Boston Food Products Co.* v. *Wilson & Co.* 245 Mass. 550, 560. *Forgeron* v. *Corey Hill Garage, Inc.* 249 Mass. 163, 166.

Apart from the question of original authority to sign the check, there was evidence from which it could have been found that Brown's act was ratified by the other directors. *Nims* v. *Mount Hermon Boys' School*, 160 Mass. 177, 182. *Beacon Trust Co.* v. *Souther*, 183 Mass. 413, 417. *Glovin* v. *Eagle Clothing Co. Inc.* 247 Mass. 215, 218.

The exception to the admission in evidence of a receipt given to Brown for the check on the ground that it was addressed to him personally cannot be sustained. In form it was substantially like the receipts given to the other stockholders, and it is apparent that it was intended for the defendant. If it were inadmissible, no rights of the defendant were prejudiced.

The exception to the exclusion of the question, whether the check given by the defendant to the plaintiff was referred to in an audit of the defendant's books, is without merit; the question was immaterial to any issue involved.

As the jury were warranted in finding that Brown had authority from the defendant to give the check and that there was a valid consideration therefor, the entry must be

*Exceptions overruled.*