# CRANE CO. *vs.* PARK CONSTRUCTION CO., INC. & others.

Middlesex.   April 8, 1969. — May 5, 1969.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Agency,* Scope of authority or employment, Ratification.   *Estoppel.*
   *Public Works.   Payment.*

In a suit by one who furnished boilers to the heating subcontractor on a
   public building construction project to recover the price thereof un-
   der G. L. c. 149, § 29, where it appeared that after installation of the
   boilers the general contractor paid the price thereof to the subcon-
   tractor but refused to pay him for work he performed later until he
   procured a certificate that he had paid the plaintiff, that the sub-
   contractor made out a check to the plaintiff and delivered it to an
   agent of the plaintiff, that the agent gave the subcontractor a certifi-
   cate reciting that the check had been "received as payment" for the
   boilers, that after obtaining the certificate the general contractor in
   reliance thereon, without ascertaining whether the check had been
   honored, paid the subcontractor for his later work in an amount ex-
   ceeding the price of the boilers, and that the subcontractor's check
   was dishonored and the plaintiff so notified the general contractor
   promptly, evidence warranted findings that the agent had apparent
   authority to accept the subcontractor's check and to give the cer-
   tificate or that the plaintiff ratified the agent's acts by failure to dis-
   avow them promptly [16–17]; and the plaintiff was estopped to as-
   sert against the general contractor and the surety on its statutory
   bond that the plaintiff had not been paid for the boilers [17].

BILL IN EQUITY filed in the Superior Court on Janu-
ary 31, 1964.

The suit was heard by *DeSaulnier,* J.

*James A. O'Donovan* for the plaintiff.

*Jerrold A. Olanoff* (*Sally A. Corwin* with him) for Park
Construction Co., Inc. & another.

CUTTER, J.   Park Construction Co., Inc. (Park) became
general contractor in February, 1963, for an addition to a
public school.   Crane Co. (Crane) furnished two boilers to
Alfred L. Butler, a heating, ventilating, and air conditioning
subcontractor.   Crane now seeks to recover the price of the
boilers ($8,750) owed to it as a claim against Park's pay-

ment bond. See G. L. c. 149, § 29, as amended through St. 1962, c. 696; see later amendment by St. 1964, c. 609, §§ 4–5. By final decree the bill was dismissed. The facts are stated upon the basis of the trial judge's report of material facts, except as otherwise indicated. The evidence is reported.

Butler negotiated for the boilers with Frank Bresnihan, Crane's agent in the Boston area. Bresnihan "solicited business on behalf of Crane . . . [gave service to] Crane's customers and received Butler's order . . . for the Crane boilers and did everything that would be beneficial to Crane in the Boston area." Butler had known Bresnihan "for many years as the agent for Crane." The evidence shows that a representative of Park had dealt with him previously.

The boilers were installed in the school during July, 1963. Butler in July "requisitioned $11,000 from Park for the boilers." Park on August 24 or 26, 1963, paid Butler's July requisition, including $11,000 for the boilers, after Butler had furnished Park certificates from all Butler's suppliers that they had been paid for items in Butler's June requisition.

On August 26, Butler sent Park its requisition for work performed during August. Park, before making payment, requested certificates from Butler's suppliers that "they had been paid from the money requisitioned in July." On September 20, Butler made out a check for $8,750 to Crane and delivered it to Bresnihan. He told Bresnihan that he could not be paid by Park unless he had a certificate from Crane that Crane had been paid for the boilers. Bresnihan gave such a certificate [1] to Butler. After receiving the certificate Park paid Butler $17,453.70.

---

[1] The certificate, apparently typed for Butler on his letterhead and by him given to Bresnihan for signature, read in part, "[R]eceived as payment check #10437 in the amount of $8,750.00 for labor and . . . material delivered to A. L. Butler & Company at the Senior High School Addition, Lexington, Massachusetts, for the month of July, 1963." This certificate was signed, "Crane Company By: Frank Bresnihan 10 High Street, Boston, Mass." Bresnihan knew that Butler was going to use the certificate to secure payment of his August requisition work. Butler did not disclose to Crane or Bresnihan, at the time he gave Bresnihan the check later dishonored, that he was "having business difficulties."

Thereafter Butler's check to Crane was dishonored for lack of sufficient funds in Butler's bank account. Crane, which notified Park of this, has never been paid for the boilers.

The trial judge concluded that Bresnihan, "because of his activities as an agent had the apparent authority to issue a certificate on Crane's behalf" and "to accept the check" for Crane. "Bresnihan knew that Park was relying on Crane's certificate and would not have made the payment to Butler" without it.

1. The trial judge's findings and conclusions concerning Bresnihan's relationship to Crane were justified by the evidence. Bresnihan testified that he was Crane's representative for eastern Massachusetts. His "duties were to get specifications, to take jobs over and quote them . . . on occasion [to] take care of service . . . and to do anything else that would be beneficial to . . . Crane . . . in this area." He had a commission sales agreement with Crane.[2] Although it was "usual" to have payments by customers "sent directly to . . . Crane," this "wasn't wholly adhered to," as in this case. Bresnihan took Butler's check thinking that he was helping Crane by "getting . . . payment on an invoice . . . about 60 days old." He first communicated to Crane the facts about the certificate he had signed when Crane told him Butler's check had been dishonored.

Bresnihan, as a matter of good customer relations, went to the jobsite once to discuss a problem concerning the boilers' tubes. His duties for Crane "would vary somewhat depending on the job. Both Crane and . . . [he] were trying to promote Crane and . . . were both willing to do whatever . . . [they] thought would be the best for . . . Crane." In a deposition by a general credit manager of

---

[2] It was not shown that Park had knowledge of the details of this agreement which described Bresnihan as a "commission representative." It provided, among other things, that all orders "shall be subject to acceptance by the General Credit Department" of the Pacific Steel Boiler Division of Crane, and that Bresnihan had "no authority to create or incur any liability against" Crane. A communication by Crane to Park on October 17, 1963, referred to Bresnihan as "our agent" but did not disclaim or repudiate Bresnihan's action in giving the certificate.

Crane, Bresnihan was described as "our Pacific Steel Boiler Agent." During November and December, 1963, Bresnihan, at Crane's request, tried to obtain payment of the sum owed to Crane by Butler. Park and Butler both knew that Bresnihan represented many firms as sales representative in the Boston area.

It has been said "that an agent who solicits orders and sends them to his principal to be filled has no implied authority to receive payment for the goods." See *Sacks* v. *Martin Equip. Co.* 333 Mass. 274, 280. See also *Clark* v. *Murphy,* 164 Mass. 490, 491; *Boice-Perrine Co.* v. *Kelley,* 243 Mass. 327, 330–331; *Aluminum Prod. Co.* v. *Regal Apparel Co.* 296 Mass. 84, 88; Restatement 2d: Agency, § 70 (and see § 62). In the *Boice-Perrine Co.* case, the rule set out above was stated. There, however, on "slender" evidence, it was held that ratification of a selling agent's unauthorized act in accepting payment could be inferred if it was not immediately disaffirmed by the principal. Rugg, C.J., went on to say: "Prompt disavowal of such act is imperative because the inference of authority flows readily from the trust reposed by a principal in his agent. Harm to the victim of such unauthorized conduct of an agent may be repaired or mitigated by immediate knowledge of the denial of responsibility by the principal." No such disavowal of Bresnihan's act by Crane was here shown, although there was prompt notice of the dishonor of Butler's check. Cf. *Pampegian* v. *Richmond,* 319 Mass. 218–219, which, however, did not involve a selling agent.

The scope of Bresnihan's actual authority is somewhat ambiguous. There was evidence which justified the conclusion that Bresnihan did more than act as a sales solicitor for Crane. The trial judge could give weight to the testimony that Bresnihan provided some service, that he actually appeared as Crane's representative at the jobsite, that there was not always strict adherence to the contract between Crane and Bresnihan, and that Crane accepted efforts by Bresnihan not specifically required by the contract. Although as in the *Boice-Perrine Co.* case, 243 Mass. 327, 330–

331, the evidence is "slender," we think that the trial judge (although not required to do so) could reasonably infer either (a) that Bresnihan, who appears to have acted wholly in good faith and in what he believed to be Crane's interest, had at least apparent authority to accept Butler's check and to give the certificate, or (b) that Crane ratified Bresnihan's act by failure to disavow it promptly. See *Crane Co.* v. *James McHugh Sons, Inc.* 108 F. 2d 55, 58–59 (10th Cir.).

2. If Bresnihan is to be treated as Crane's agent, his act in giving the certificate estops Crane to assert against Park and Park's surety that Crane had not been paid for the boilers (see *Moyer* v. *United States*, 206 F. 2d 57, 60 [4th Cir.]) since Park relied upon the certificate to its detriment. See *McLearn* v. *Hill*, 276 Mass. 519, 524–527; *Looney* v. *Trimount Theatres, Inc.* 282 Mass. 275, 279–280. Cf. *Cleaveland* v. *Malden Sav. Bank*, 291 Mass. 295, 296–298. The certificate put it in Butler's power to obtain payment from Park of an amount (in excess of the price of the boilers) which Park would not have paid without the certificate. There was clear knowledge by Crane's agent that there would be reliance. See *Carpenter* v. *King*, 9 Met. 511, 517; *Antonelli Constr. Co.* v. *Aetna Cas. & Surety Co.* 354 Mass. 465, 468–469; Williston, Contracts (3d ed.) § 139. See also *Golding* v. *108 Longwood Ave. Inc.* 325 Mass. 465, 467–468; *Yorke* v. *Taylor*, 332 Mass. 368, 374.

Although, as between Butler and Crane, the receipt of Butler's dishonored check did not discharge Butler's debt to Crane (see G. L. c. 106, § 2–511 [3] and Uniform Commercial Code, 1962 Official Text with comments, p. 148 and comment 4 to that section), the representation contained in the certificate was made for the benefit of Park. Park relied on it to its detriment by forgoing the opportunity to withhold from Butler payments which Park could have retained under the general conditions of the prime contract. See *Hub Steel & Iron Works, Inc.* v. *Dyer*, 283 Mass. 463, 464–465. The circumstance that the certificate recited that Crane "received as payment" a check for $8,750 did not,

we think, impose in the circumstances the duty upon Park
to make certain that the check had been honored before
relying upon the certificate.

*Final decree affirmed with costs
of appeal.*