WALTER M. JUERGENS *vs.* VENTURE CAPITAL
CORPORATION & others.

Middlesex.    November 13, 1972. — May 2, 1973.

Present: HALE, C.J., KEVILLE, & GRANT, JJ.

*Corporation,* Officers and agents. *Agency,* Scope of authority, Ratification, Knowledge of agent.

Evidence in a suit in equity against a lending corporation required conclusions that, through the extensive corporate authority with which one who was its president, chief executive officer, principal stockholder, and a director was clothed, coupled with the authority which he exercised without objection from the other two directors, including the practice of repurchasing all stock in the corporation offered for redemption, the president had apparent authority to agree with the plaintiff that the corporation would repurchase his stock in it, and that by failing promptly to disavow such agreement, by retaining the stock certificate returned by the plaintiff, and by making a partial payment of the repurchase price the corporation ratified such agreement and was bound thereby without a vote of its directors or stockholders. [275-279] GRANT, J., concurring in result.

BILL IN EQUITY filed in the Superior Court on March 15, 1971.

The suit was heard by *Moynihan, J.*

*Douglas G. Moxham* for the plaintiff.

*Sumner H. Woodrow* for Venture Capital Corporation.

KEVILLE, J.   This is a bill in equity in which the plaintiff (Juergens) seeks to establish a debt of the corporate defendant (Venture Capital) and to reach and apply in satisfaction of that debt the obligations of two individual defendants to Venture Capital. The case is here on Juergens' appeal from the trial judge's decree dismissing the bill.

Since we have before us the judge's findings of fact and a transcript of the evidence, all questions of law, fact and discretion are open for our decision. From the evidence we

can find facts not expressly found by the judge. If convinced that he was plainly wrong, we can find facts contrary to his findings. *Lowell Bar Assn. v. Loeb,* 315 Mass. 176, 178.

Venture Capital was organized in April, 1969 for the purpose of engaging in the business of loaning money and providing venture capital for other corporations. Its articles of organization contained broad powers for the performance of all acts incidental to these purposes. Maurice Shear (Shear) was the promoter of Venture Capital. In February, 1969 he was president of the Industrial Bank and Trust Company. Juergens was a customer of the bank. Shear was engaged in obtaining subscribers to capital stock of the corporation which he planned to form. He invited Juergens to become one of the original subscribers. Juergens agreed to subscribe to shares of the còrporaton. On or about February 24, 1969, Juergens executed written subscription agreements for 35,000 shares and gave Shear checks payable to Venture Capital totaling $26,000. Venture Capital received the proceeds of the checks. Juergens received his stock certificate on or about February 12, 1970. Approximately twenty other persons became subscribers to the original shares. Shortly after its formation, Venture Capital began to do business and made two loans to the individual defendants, one for $120,000, and the other for $23,000.

In the latter part of 1969, Juergens became concerned about the fact that there had been no public offering of the shares of Venture Capital. He had been told by Shear in their initial discussions that it was expected that there would be a public offering of shares. Juergens received evasive explanations from Shear as to the status of the corporation and the public issuance of shares. He told Shear that he wanted his money back.

Beginning in January, 1970, Juergens made numerous telephone calls to Shear. Shear told him that he would get his money in April. Juergens telephoned Shear in April, demanded the return of his money and threatened suit unless he obtained the refund. Shear promised that he would send him a check for $26,000 if Juergens returned the

stock certificate properly endorsed. Juergens mailed his
stock certificate to the corporation but in return received a
check for only $10,000. He inquired about payment of the
balance of $16,000. Shear told him that it would be paid in
June, 1970. In June Shear gave him an evasive answer as to
why payment could not be made at that time. Juergens
here seeks to recover the unpaid balance of $16,000.
Balance sheets prepared by a certified public accountant
from the corporate records at the direction of the board of
directors and addressed to them for periods ending Sep-
tember 30, 1970, and November 30, 1970, each carry a
liability entry "Common Stock Refunds Payable
$16,000.00." The entries pertain to the refund claimed by
Juergens. The balance sheets also show a capital surplus of
$131,450 and an excess of assets over liabilities of at least
$140,000.

In June, 1970 Shear also told Juergens that he would be
reimbursed by Venture Capital for the interest charges on
the loan which he had taken out with Industrial Bank and
Trust Company in order to finance the purchase of his
shares. We agree with the judge that there was no consid-
eration for this promise.

Shear was not only Venture Capital's promoter, he was
its principal stockholder owning at least fifty-three percent
of the outstanding shares. He was president, treasurer and
one of three directors. The others were his attorney and his
secretary. The latter was present at all times in the
corporation's office; telephone calls relating to the corpo-
ration came through her; she kept the corporate checkbook
and checks were made out under her direction.

Under the by-laws, as president, Shear was designated as
chief executive officer. The by-laws also provided that the
president "subject to the direction of the Board of Direc-
tors, shall have general charge of the business, affairs and
property of the Corporation and general supervision of its
officers and agents." Shear actively managed all the
corporation's business; and the other directors permitted
him to exercise complete control over and management of
all corporate affairs.

The sole meeting of the board of directors was held in April, 1969. At that meeting the directors adopted a plan under which Shear, as president, was given exclusive authority to offer for sale, sell and issue stock of the corporation. He handled the sale of all the corporate stock which was sold, negotiated the only two loans made by the corporation, and prior to November 30, 1970, made refunds to thirteen shareholders who requested a return of their money in exchange for their share certificates. All who requested refunds were paid except Juergens.

The by-laws provided that "[t]he Treasurer [Shear] shall . . . (d) Render to the President or the Board of Directors whenever requested, a statement of the financial condition of the Corporation and of all his transactions as Treasurer; and render a full financial report at the annual meeting of the stockholders if called upon to do so." On March 6, 1971, there was a special meeting of stockholders in lieu of the annual meeting. The three directors were present and Shear presided. The entire financial picture of the corporation was brought before the meeting. A vote authorized the treasurer to repurchase for ten cents a share all of the capital stock of the corporation which had been issued for ten cents a share except for those shares issued to Shear. Juergens' subscription was for 25,000 shares at $1.00 a share and 10,000 shares at ten cents a share.

We concur with the judge that it may be inferred that the board of directors knew in the latter part of 1970 that Juergens had returned his stock certificate to the corporation in April, 1970, and received $10,000 in return. The facts warrant a further inference that in the latter part of 1970 the directors either knew or should have known that Shear had committed the corporation to the payment to Juergens of the $16,000 carried on its balance sheets as a liability, and that they had actual knowledge of the agreement not later than the stockholders' meeting held on March 6, 1971.

The judge concluded that Shear had no authority to bind the corporation by his agreement with Juergens, and that the board of directors did not ratify that agreement. We

agree that the facts do not support the plaintiff's assertion that there was express or implied authority for Shear's act. There remain for consideration, however, the questions whether Shear had apparent authority, and whether the corporation, through the failure of its board of directors to disaffirm Shear's commitment to Juergens, was obliged to honor it. It is our view that there was a combination of apparent authority and ratification. There being no charter prohibition, Venture Capital, in the circumstances, could purchase its own stock. G. L. c. 156B, § 9 (m). Through the extensive corporate authority in which he was clothed, coupled with that which he exercised without objection from the corporation, including his customary practice of granting refunds to all stockholders seeking to turn in their shares — we think that Venture Capital conferred upon Shear apparent authority to bind it to the agreement with Juergens. *Condé Nast Press, Inc.* v. *Cornhill Publishing Co*. 255 Mass. 480, 485. *H. H. Brown Shoe Co*. v. *H. C. Brown Co. Inc*. 258 Mass. 343, 347. *Lonergan* v. *Highland Trust Co*. 287 Mass. 550, 557-558. *Arkansas Valley Feed Mills* v. *Fox DeLuxe Foods,* 171 F. Supp. 145, 160-161 (W. D. Ark.) aff'd 273 F. 2d 804 (8th Cir.). *Kaplan* v. *Reid Bros. Inc*. 104 Cal. App. 268, 271.

The corporation could not avoid its obligation to Juergens by asserting lack of knowledge on the part of its directors. Shear's knowledge of the transaction was constructive notice to the corporation. *Beacon Trust Co*. v. *Souther,* 183 Mass. 413, 415-417. *Sarna* v. *American Bosch Magneto Corp*. 290 Mass. 340, 343. *Air Technical Dev. Co. Inc*. v. *Arizona Bank,* 101 Ariz. 70, 73. Fletcher, Cyc. Corporations (Perm. ed.) § 809, p. 75.

Moreover, it was the duty of the directors to keep themselves informed about the conduct of the business. *Lonergan* v. *Highland Trust Co*. 287 Mass. 550, 558. *Ingalls Iron Works Co*. v. *Ingalls,* 177 F. Supp. 151, 163 (N. D. Ala.). Knowledge of the agreement was available to the directors and imputable to them in the latter part of 1970. *F. M. Davies & Co*. v. *Porter,* 248 F. 397, 400-401 (8th Cir.). To avoid responsibility, Venture Capital through its direc-

tors should have disavowed the agreement promptly. *Boice-Perrine Co.* v. *Kelley,* 243 Mass. 327, 330-331. *Crane Co.* v. *Park Constr. Co. Inc.* 356 Mass. 13, 16. Restatement 2d: Agency, § 99. In failing promptly to disavow the agreement, in retaining Juergens' certificate (see *Ryan* v. *Charles E. Reed & Co.* 266 Mass. 293, 302 and *Wilkins* v. *Waldo Lumber Co.* 130 Me. 5, 13) and having made part payment to Juergens in the sum of $10,000 in exchange for his shares (see *Cumberland Glass Mfg. Co.* v. *Wheaton,* 208 Mass. 425, 431), the corporation ratified the agreement. Ratification here may be inferred without a vote of the directors or stockholders. *Alden Bros. Co.* v. *Dunn,* 264 Mass. 355, 361.

The final decree is reversed. The case is remanded to the Superior Court for further proceedings to determine the present status of the indebtedness, if any, of the individual defendants to the defendant, Venture Capital. A new final decree is to be entered declaring that Venture Capital is indebted to the plaintiff in the sum of $16,000 with interest from March 15, 1971, and granting the plaintiff such relief, if any, against the individual defendants as may appear to be appropriate.

*So ordered.*


GRANT, J. (concurring in result). I concur in the result because Venture Capital's articles of organization do not provide that it may not repurchase shares of its own stock (see G. L. c. 156B, § 9[m]) and because its board of directors should be held to have ratified Shear's agreement to repurchase the plaintiff's shares. I am of opinion, however, that the provisions of G. L. c. 156B, § 55(i), preclude a holding that either the president or a single director of a corporation can be clothed with apparent authority to bind the corporation to a reacquisition of its stock for value.