## New England Merchants National Bank

v.

## Lost Valley Corporation

April 13, 1979

*O'Neill, Backus, Spielman*, of Manchester, and *James C. Donnelly, Jr.*, of Massachusetts, by brief and orally, for the plaintiff.

*Thomas E. Kneeland, Jr.*, of Massachusetts, by brief and orally, for the defendant.

DOUGLAS, J. This is an appeal from an action brought by the plaintiff bank to recover on a written guaranty by the defendant corporation. Trial before the superior court resulted in a verdict for the plaintiff in the amount of $532,802.22. The defendant filed a bill of exceptions and all questions of law were reserved and transferred by *Loughlin*, C.J.

We hold that the following findings of the trial judge were warranted by the record. Lost Valley Corporation [Lost Valley], a Massachusetts corporation with its principal place of business at the law office of Thomas E. Kneeland, Jr., was duly organized on July 13, 1972, for the purpose of selling developed real estate lots in North Woodstock, New Hampshire. Since July 1973, Kneeland has served as the treasurer, clerk, and a director of Lost Valley and owns fifty percent of its stock. Frederick M. O'Neill, the president and only other director of the defendant corporation, owns the remaining fifty percent.

Beginning in 1969, the plaintiff made a series of loans to Kneeland and O'Neill, as joint obligors, to finance improvements to Lost Valley's real estate lots in North Woodstock. These loans were due and payable in February 1975 in the amount of $40,000. Kneeland also incurred certain other obligations with the bank totalling $484,717.64 to finance business dealings unrelated to Lost Valley's property in North Woodstock.

On January 30, 1975, Kneeland and O'Neill met with bank officials to request that the $40,000 loan be extended from February to July of 1975. The bank agreed to grant such an extension provided that Lost Valley would guarantee the respective obligations of Kneeland and O'Neill to the bank.

On behalf of Lost Valley, Kneeland, as treasurer, and O'Neill, as president, executed and delivered to the plaintiff a corporate resolution authorizing the president or the treasurer of Lost Valley to exe-

cute any agreements deemed necessary in connection with loans from the plaintiff. At the same time, Kneeland executed and delivered a written guaranty on behalf of Lost Valley which provides for due payment of:

> all liabilities, obligations and undertakings of Thomas E. Kneeland, Jr., Frederick M. O'Neill to said Bank, whether direct or indirect, absolute or contingent, due to become due, now existing or hereafter arising or acquired, expressly including, without limiting the generality of the foregoing, obligations upon notes whether as maker or endorser, upon acceptances, upon agreements relating to acceptances, upon obligations incident to the issuance of letters of credit, upon security agreements, and upon guaranties of the liabilities and obligations of others.

The guaranty further provided that it would continue in effect "regardless of payments by any one person or from any other source, until each and all such liabilities, obligations and undertakings have been paid in full." The guaranty recites that it was executed under seal, and the corporate seal is stamped on the face of the document. Although Kneeland identified himself as the clerk on the face of the guaranty, he was also the treasurer.

The bank demanded payment but none of the foregoing obligations was paid. The principal amount owed to the plaintiff by Kneeland, including the $40,000 note executed with O'Neill, is $524,717.64. The plaintiff brought an action against Kneeland and others in the Massachusetts Superior Court, which issued a summary judgment decree for the sum of $524,717.64 exclusive of interest. The judgment is unpaid and has been appealed. Kneeland was adjudicated a bankrupt in the United States District Court for the District of Massachusetts on February 28, 1977.

Although the plaintiff has demanded payment, Lost Valley has refused to honor its written guaranty. The defendant maintains that the guaranty is unenforceable as a matter of law. We disagree.

The defendant's principal argument is that the act of guaranteeing Kneeland's personal obligations is *ultra vires*. The trial court correctly ruled that the validity of the guaranty as a contractual obligation of the defendant is governed by the laws of Massachusetts as the State "with which the contract has its most significant relationship." *Consolidated Mut. Cas. Co. v. Radio Foods Co.*, 108 N.H. 494, 496, 240 A.2d 47, 49 (1968). Mass. Gen. Laws Ann. ch. 156 B § 9 (1970),

which governs the powers of Massachusetts corporations, provides in pertinent part:

> Except as otherwise provided in its articles of organization, every corporation shall have power in furtherance of its corporate purposes:
>
> . . .
>
> (h) to make contracts, give guarantees and incur liabilities . . . and to secure any of its obligations by mortgage, pledge or encumbrance of . . . all or any of its property or any interest therein, wherever situated. . . .

According to the evidence presented at trial, Lost Valley's charter is silent on the issue of its power to give corporate guaranties. In *Juergens v. Venture Capital Corp.*, 1 Mass. App. Ct. 274, 295 N.E.2d 398 (1973), the court ruled that a corporation has the power to purchase its own stock in the absence of a charter prohibition. MASS. GEN. LAWS ANN. ch. 156 B § 9(m) (1970). Section 9(h) similarly permits the defendant corporation to execute the guaranty in question in the absence of a charter prohibition. The *ultra vires* cases relied upon by the defendant predate section 9 and are not pertinent to its interpretation. *See, e.g., Boston Box Co., Inc. v. Shapiro*, 249 Mass. 373, 144 N.E. 233 (1924); *J. G. Brill Co. v. Norton & Taunton Street Railway*, 189 Mass. 431, 75 N.E. 1090 (1905).

■ The defendant also asserts that there was no consideration for the guaranty. The plaintiff received the guaranty as consideration for its agreement to extend the time for repayment of the loans to Kneeland and O'Neill. *See Merchants Discount Co. v. Federal Street Corp.*, 300 Mass. 167, 170, 14 N.E.2d 155, 156 (1938); *Rome v. Gaunt*, 246 Mass. 82, 94, 140 N.E. 242, 245 (1922). The trier of fact could find that the defendant corporation, which utilized the $40,000 loan to improve its properties, benefitted from the extension of the loans. Even in the absence of any direct benefit, the corporation is bound by its guaranty. The bank's extension of credit to Kneeland and O'Neill on the strength of Lost Valley's promise is, itself, sufficient consideration to support the guaranty. *Rome v. Gaunt*, 246 Mass. at 94, 140 N.E. at 245.

■■ The defendant next contends that Kneeland's signature was insufficient to bind the defendant. Kneeland and O'Neill admitted that the signature was genuine in their pretrial affidavits. The corpo-

rate resolution authorized either the president or the treasurer of Lost Valley to execute agreements with the plaintiff. The defendant's contention is based on the fact that Kneeland signed the guaranty in his capacity as clerk, not treasurer. It is undisputed that Kneeland has served in both capacities simultaneously since 1973. Where an individual holds corporate office in two different capacities and executes a deed or contract, it is presumed that he did so in the capacity which would make the act binding on the corporation. 20 AM. JUR. 2d *Evidence* § 168, at 210 (1967). In the absence of evidence to show that Kneeland did not also sign the guaranty in his capacity as treasurer, the inference in favor of the plaintiff was warranted.

The scope of Kneeland's authority to bind the corporation is also a disputed issue. The plaintiff was aware of the working relationships between the defendant corporation, O'Neill, and Kneeland, and was aware that Kneeland's personal obligations totalling over half a million dollars were, except for the $40,000 loan, unrelated to the business of Lost Valley. The defendant contends that, even if the guaranty is enforceable, it covers only the $40,000 loan, because the plaintiff's knowledge of the nature of the remaining loans is constructive notice of the limitations on Kneeland's power to bind the corporation.

■ ■ We have already decided that the act of guaranteeing the unrelated loans of Kneeland was not *ultra vires*. Therefore, the nature of the loans is not determinative of the scope of Kneeland's power. Kneeland is the treasurer, clerk, director, and one-half owner of the defendant corporation. The corporate resolution which was embossed with the official corporate seal is further evidence of his authority. *See Federal National Bank v. Shoolman*, 276 Mass. 191, 192–93, 176 N.E. 919, 920 (1931). Kneeland's various corporate capacities together with the resolution constitute sufficient evidence of apparent if not actual authority to bind Lost Valley to the agreement with the plaintiff. Moreover, the board of directors of the defendant corporation ratified Kneeland's actions by its failure to disavow the guaranty before the loans became due and by using the extension of credit. *Juergens v. Venture Capital Corp.*, 1 Mass. App. Ct. at 279, 295 N.E.2d at 401.

The defendant further contends that certain findings of the trial judge are unsupported by the evidence. We have examined the evidence and are satisfied that all of the findings of the judge are justified by the evidence and reasonable inferences therefrom. There was no error.

*Exceptions overruled.*

All concurred.