**Roger L. FRENCH, Plaintiff,**

**v.**

**The CHOSIN FEW, INC., Defendant.**

**No. CIV1:00CV294.**

United States District Court,
W.D. North Carolina,
Asheville Division.

Nov. 20, 2001.

T. Douglas Wilson, Jr., McGuire, Wood & Bissette, P.A., Asheville, NC, Isaac N. Northup, Elizabeth Ellen McConnell, Northup & McConnell, PLLC, Asheville, NC, Rosanna Sattler, Posternak, Blankstein & Lund, L.L.P., Boston, MA, for plaintiff.

Gary L. Beaver, Adams, Kleemeier, Hagan, Hannah & Fouts, Greensboro, NC, Gary C. Crossen, Foley, Hoag & Eliot, Boston, MA, for defendant.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on Defendant's motion to dismiss, Defendant's motion for summary judgment, and Plaintiff's motion for judgment on the pleadings. The Court will treat each of these motions separately, although some of the same issues are raised in each. For the reasons enumerated below, the Court will grant the Defendant's motions and deny the Plaintiff's motion.

### I. FACTUAL HISTORY

In December 1950, a minuscule number of American soldiers in North Korea held at bay massive Chinese forces against all odds and at great sacrifice. The surviving veterans of the battle, which occurred in the Chosin Reservoir, are most aptly called The Chosin Few. Frank Kerr and Jack Hessman co-founded a non-profit corporation known as "The Chosin Few, Inc.," (CFI) in order to "unite the surviving war veterans of the Chosin Reservoir Campaign in an exclusive fraternity of honor to perpetuate the spirit of valor, sacrifice and duty exemplified by those who served in this epic campaign...." Exhibit 2, Articles of Organization, *attached to* Defendant's Motion for Summary Judgment, filed September 17, 2001 [Defendant's Motion]. The survivors, whose numbers decrease daily, celebrated their 50th reunion in December 2000.

Apparently, over a period of years, the members of the board of directors divided into two "factions," one supporting co-founder Frank Kerr (Kerr faction) and the other past president Richard Oly (Oly faction). This division between the two factions of CFI devolved into open hostility in the first half of 1997. Each faction called a meeting of the board of directors which the other faction did not attend. At those meetings, each faction purported to take action on behalf of CFI. The Kerr faction held its meeting in June of 1997 in Reno, Nevada. Among the actions taken at that meeting was a resolution giving the co-founders of CFI (Kerr and Hessman) authority to "contact legal council [sic], as required, in the event litigation is necessary to solve our Chosin Few problems." Exhibit 4, Board Minutes for June 26, 1997, *attached to* Defendant's Motion, at 6.

The substantive provisions of the resolutions passed by the two factions at their respective "board meetings" in 1997 created a heated dispute over control of CFI.

The Plaintiff in this case represented the Kerr faction in their lawsuit against the Oly faction arising out of that dispute. He did so under the terms of a fee agreement entered into between himself and Ken Santor, purportedly as president of CFI, representing the Kerr faction board of directors. Plaintiff entered into this dispute after the Kerr faction dismissed their original law firm. That firm requested that each of the Kerr directors name themselves individually as plaintiffs and be personally responsible for payment of legal fees. The Kerr directors would not agree to those terms. As a result, the Kerr faction turned to the Plaintiff to represent them in that case. Plaintiff received the entire file from the previous law firm, as well as a portion of its retainer.

That litigation eventually found its way into this Court. The case proceeded to trial in November 1998, but an agreement was reached between the parties during trial and in January 1999, the undersigned issued a Consent Judgment designed to resolve the impasse by having an election for vacant positions on the board of directors. *See,* Exhibit 11, Consent Judgment, filed January 7, 1999, in Civil Action 1:98cv59, *attached to* Defendant's Motion. Pivotal to the election was the three member nominating committee to which Harry Hogan, representing the Kerr faction, and Howard Mason, representing the Oly faction, were appointed. These individuals were to select a third member and the committee would then propose a slate of candidates. *Id.,* at 3. Unfortunately, each faction then embarked on a campaign to insure this third member would be sympathetic to their cause. As a result, Hogan and Mason were unable to agree on the third member and no election ever occurred. Furthermore, the Kerr faction attempted to take control of CFI's financial assets and change the delivery of mail directed to the corporation. These actions resulted in additional litigation concerning an administrative postal dispute and an interpleader action being filed in the Superior Court of Buncombe County, North Carolina. The Kerr faction also sought publication of material in *The Chosin Few News Digest* which was in contravention of the Consent Judgment. The attempts to publish the *News Digest* led to an intervention in the interpleader action for injunctive relief by a group known as the "Members in Good Standing." The interpleader action was removed to this Court and consolidated with the original lawsuit (collectively the "underlying litigation"). Over one year after the January 7, 1999, Consent Judgment, none of the parties had effected any portion of the provisions thereof, further litigation had spawned, and the board of directors had completely failed to function.

As a result of this complete breakdown of the original Consent Judgment, this Court issued an order that members of the Kerr faction appear on March 27, 2000, and show cause why they should not be held in contempt of court for their action. Exhibit 35, Order filed February 24, 2000, in Consolidated Civil Actions 1:98cv59 and 1:99cv267, *attached to* Defendant's Motion. Although he did not appear at this hearing, Frank Kerr filed an affidavit in which he asserted that he, Santor, and their faction of the board of directors had acted in accordance with the advice of the Plaintiff when they took the steps outlined above in violation of the terms of the Consent Judgment. The Plaintiff did not appear at this hearing. Kerr was purged of contempt, largely on the basis of his testimony that he had acted on Plaintiff's legal advice.

At that hearing, this Court was prepared to dissolve CFI based on the total deadlock that had gripped its leadership. However, General Ray Davis, USMC–Ret., a Congressional Medal of Honor recipient for his service during the Chosin Reservoir Campaign, along with other Medal of Honor recipients, offered their assistance in bringing CFI back to life. Based on this offer of assistance, an order was fashioned whereby three Medal of Honor winners formed a nominating committee to appoint an interim board of directors. Exhibit 45, Order filed May 3, 2000, in the Consolidated Civil Actions, *attached to* Defendant's Motion. This interim board was given full power to oversee the operations of CFI, including making decisions about the retention of and payment to counsel out of CFI funds, until regular elections could be held and a new board of directors established. *Id.,* at 8–13.

Prior to this resolution, the Plaintiff became personally involved in a dispute over some of the assets of CFI. As a part of the show cause Order filed February 24, 2000, this Court ordered that all attorneys involved in the underlying litigation file a statement of the assets of CFI and that no fees be paid to attorneys out of any funds even "arguably" belonging to CFI. *Id.,* at 5. Despite this order, the Plaintiff accepted $7,400 from membership dues collected by Kerr. Plaintiff did not disclose the existence of these funds, nor did he willingly return the money to CFI even after being ordered to do so by this Court. Although he eventually submitted a check to the escrow account established to collect CFI's assets, Plaintiff attempted to convey the check with a restrictive endorsement and an attorney's lien on the funds. This Court was forced to issue an order nullifying this attempted lien on the funds. As a part of that order, the Court specifically directed that any decision to pay the Plaintiff's claim for attorney's fees was delegated to the interim board of directors. *See* Exhibit 43, Order filed April 14, 2000, in the Consolidated Civil Actions, *attached to* Defendant's Motion.

In June 2000, the Plaintiff submitted a claim for attorney's fees to the interim board. Prior to their decision on Plaintiff's claim, he filed an action in Massachusetts state court against CFI for those fees. CFI's interim board denied the claim in August of 2000. After considerable procedural wrangling-during which Plaintiff's conduct was, as this Court has already described, "outrageous"—the case was removed to the United States District Court for the District of Massachusetts and then transferred to this District. Exhibit 52, Order filed November 21, 2000, in the Consolidated Civil Actions, *attached to* Defendant's Motion, at 4. Defendant filed an answer and counterclaim. Plaintiff has filed a motion for judgment on the pleadings. Defendant has filed a motion to dismiss Count Three of the complaint for failure to state a claim and for summary judgment on all three counts of the complaint as well as on the counterclaims.

## II. PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff moves for judgment on the pleadings on the counterclaim raised by Defendant in the "Ninth Affirmative Defense and Counterclaim" pursuant to Fed. R.Civ.P. 8, contending that the paragraph is inadequate to state a claim. Defendant responds that the paragraph was mislabeled "and Counterclaim" by clerical error and was not intended to assert a counterclaim. Therefore, the Court will order the words "and Counterclaim" stricken from the "Ninth Affirmative Defense" of Defendant's Amended Answer and Counterclaim pursuant to its inherent authority and Fed. R.Civ.P. 60(a).

Plaintiff also argues that the claims raised in Defendant's "Tenth Affirmative Defense and Counterclaim" are not proper counterclaims but claims for sanctions under 28 U.S.C. § 1927. In response, Defendant admits that a claim for sanctions is properly brought as a motion rather than a counterclaim. Defendant's Reply Brief in Support of Summary Judgment, filed October 22, 2001, at 2. *See also, Wielgos v. Commonwealth Edison Co.*, 688 F.Supp. 331 (N.D.Ill.1988), *aff'd*, 892 F.2d 509 (7th Cir.1989). Thus, Defendant's "Tenth Affirmative Defense and Counterclaim" is construed as an affirmative defense and as a motion for sanctions under 28 U.S.C. § 1927. The Court will defer ruling on this motion to afford Plaintiff an opportunity to respond.

### III. DEFENDANT'S MOTION TO DISMISS

■ The Defendant has moved for dismissal of Count Three of the complaint. The standard for determining a motion pursuant to Rule 12(b)(6) is clear. The Court must "accept the factual allegations in the plaintiff['s] complaint and must construe those facts in the light most favorable to the plaintiff[ ].... [Dismissal may occur] only if it appears beyond doubt that the plaintiff[ ] can prove no set of facts in support of [his] claim that would entitle [him] to relief." *Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir.1997); Shepard's, *Motions in Federal Court*, § 5.124, at 367 (2d ed.1991). "To survive a motion under Fed.R.Civ.P. 12(b)(6), a complaint need only outline a recognized legal or equitable claim which sufficiently pinpoints the time, place, and circumstances of the alleged occurrence and which, if proven, will justify some form of relief." *Id.*, § 5.123, at 366. If "relief could be granted under any set of facts that could be proved consistent with the allegations," the motion must be denied. *Hishon v.*

*King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

■ Defendant raises a number of arguments concerning the sufficiency of the complaint in alleging a violation of Chapter 93A, the Consumer Protection Law or Unfair and Deceptive Trade Practice Act, of the General Laws of the Commonwealth of Massachusetts. In order to constitute a violation of Chapter 93A, the alleged conduct "(1) must fall 'within at least the penumbra of some common-law, statutory, or other established concept of fairness,' (2) it must be unethical or unscrupulous, and (3) it must cause substantial injury to a consumer or another businessman." *Wasserman v. Agnastopoulos*, 22 Mass. App.Ct. 672, 679, 497 N.E.2d 19, 23 (1986) (quoting *PMP Assoc., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596, 321 N.E.2d 915 (1975)); *see also, Datacomm Interface, Inc. v. Computerworld, Inc.*, 396 Mass. 760, 778, 489 N.E.2d 185, 196 (1986). Here, Plaintiff fails to allege facts sufficient to support the second element of this claim. He alleges he contracted to perform legal services for Defendant and that he has not yet been paid for those services, although he has demanded payment. The complaint does not allege any conduct that is unethical or unscrupulous, only that the Defendant breached a contractual obligation to the Plaintiff. The Defendant points to the voluminous record in this case and the underlying litigation as evidence that this dispute arises out of a good faith disagreement over the alleged contractual obligation. Most of the record of the previous litigation has been made a part of the record in this case by attachment to pleadings or motions. Insofar as some portion of the record of the underlying litigation may not have been made a part of the record in this case, this Court will take judicial notice of the entire record of the previous cases. This action is prop-

er, especially given its unique circumstances. Under Rule 201, this Court may take judicial notice of any fact "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). Certainly, the records of the cases before this Court would qualify under this rule.

> The general rule undoubtedly is that a court will not travel outside the record of the case before it in order to take notice of the proceedings in another case, even between the same parties and in the same court, unless the proceedings are put in evidence; and the rule is sometimes enforced with considerable strictness. But in exceptional cases, as high authority shows, the dictates of logic will yield to the demands of justice, and the courts, in order to reach a just result, will make use of established and uncontroverted facts not formally of record in the pending litigation.

*Morse v. Lewis,* 54 F.2d 1027, 1029 (4th Cir.1932) (internal citations omitted); *see also, Ellis v. Cates,* 178 F.2d 791 (4th Cir.1949). Taking notice of the record in this case and the underlying litigation does not convert the Defendant's motion into one for summary judgment. *Norfolk Southern Ry. Co. v. Shulimson Bros. Co., Inc.,* 1 F.Supp.2d 553 n. 1 (W.D.N.C.1998).

The substance of the underlying dispute was the authority of the respective factions of the board of directors of The Chosin Few, Inc., to take action, including the hiring of attorneys, on behalf of the corporation. The Plaintiff should have been fully aware of that fact throughout the length of his involvement in the underlying matters. He has not alleged any unethical or unscrupulous behavior on the part of the Defendant. He has merely alleged a good faith dispute over Defendant's liability pursuant to this contract. As such, that claim shall be dismissed.

## IV. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant moves for summary judgment on all of Plaintiff's claims and on its counterclaims. The counterclaims have been considered and will be disposed of as stated *infra.* As such, the motion for summary judgment on those counterclaims is moot. The motion for summary judgment is addressed on each of Plaintiff's remaining claims.

Summary judgment is appropriate when there is no genuine issue of material fact and judgment for the moving party is warranted as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party, here the Plaintiff. *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Defendant as the moving party has the initial burden to show a lack of evidence to support the Plaintiff's case. *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If that showing is made, the burden then shifts to the Plaintiff who must convince the Court that a triable issue does exist. *Id.* Such an issue will be shown "if the evidence is such that a reasonable jury could return a verdict for the [Plaintiff]." *Id.* A "mere scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* Moreover, in considering the facts of the case for purposes of this motion, the Court will view the pleadings and material presented in the light most favorable to the Plaintiff, as the nonmoving party. *Matsushita Electric Industrial Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## A. Breach of Contract

■ The Plaintiff's primary allegation is that CFI properly entered into a contract with him pursuant to which he would provide legal services in return for monetary remuneration at the rate of $150 per hour. CFI contends that any contract entered between Plaintiff and any purported agent of CFI was done so without proper authorization from the corporation, and as such, the corporation is not liable under the contract. Alternatively, Plaintiff asserts he is entitled to enforcement of the contract, even if it was not validly authorized, on a theory of apparent or implied authority.

■ In Massachusetts, as in most states, a corporation cannot act except through its agents. *Sunrise Properties, Inc. v. Bacon, Wilson, Ratner, Cohen, Salvage, Fialky & Fitzgerald, P.C.*, 425 Mass. 63, 66, 679 N.E.2d 540, 543 (1997); *Sarvis v. Boston Safe Deposit & Trust Co.*, 47 Mass.App.Ct. 86, 96, 711 N.E.2d 911, 920 (1999). As such, CFI could only be liable to Plaintiff on the contract signed by Santor under a theory of agency liability. Plaintiff asserts that Santor had the actual authority to engage him for legal representation. "Actual authority arises from a manifestation of consent by the principal that another may act as his agent." *Commonwealth Aluminum Corp. v. Baldwin Corp.*, 980 F.Supp. 598, 611 (D.Mass.1997). At the heart of this dispute over whether an agent of CFI was authorized by the corporation to retain Plaintiff for his legal services is the same dispute that lies at the bottom of the underlying litigation, *i.e.*, the question of whether or not the Kerr faction had a quorum at the Reno meeting in June 1997. Having worked to avoid entangling itself in these issues of corporate governance in order to save this organization for its membership, this Court will not revisit these claims unless it becomes absolutely necessary.

■ Assuming, *arguendo*, that the Kerr faction did have a quorum when it passed the resolutions in Reno, it remains undisputed that Santor did not have the actual authority to engage the services of Plaintiff. The two resolutions at issue gave the *"co-founders* authority to *contact* legal council [sic], as required, in the event litigation is necessary to solve our Chosin Few problems," and "empowered" Kerr to solicit money for the "Chosin Few Legal Fund." *See* Exhibit 4, *supra* (emphasis added). Neither of these resolutions constitute a manifestation of consent by CFI that Santor act on its behalf and engage legal counsel. Only the co-founders, Kerr and Hessman, were given authority to "contact" a lawyer. The president of a corporation can only be granted authority to perform an action by the express provision of the board of directors, the by-laws, or the incorporation documents. *Kelly v. Citizens Finance Co. of Lowell, Inc.*, 306 Mass. 531, 28 N.E.2d 1005 (1940). As such, Santor did not have the actual authority to enter into the fee agreement signed by him, purportedly on behalf of CFI, and Roger French on December 22, 1997.

■ Plaintiff's contention that Santor had authority to bind CFI to this contract based on his position as president is without merit. This argument is based on a theory of apparent, inherent, or implied authority. This type of vicarious agency liability is found when, "the case discloses written or spoken words or any other conduct of the principal which, reasonably interpreted, causes a third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." *Neilson v. Malcolm*

*Kenneth Co.*, 303 Mass. 437, 440, 22 N.E.2d 20, 22 (1939) (internal quotations and citations omitted); *see also, Rodowicz v. Massachusetts Mut. Life Ins. Co.*, 192 F.3d 162, 177 (1st Cir.1999). Considering Plaintiff's knowledge of the corporate in-fighting which spawned the underlying litigation, there are no words or conduct by CFI which he could reasonably have interpreted as giving consent that he serve as counsel for the corporation. This is especially obvious in light of the fact that the previous law firm withdrew its representation of CFI because of concerns about the authority of the Kerr faction to bind the corporation.

The *Kelly* case cited *supra* presents a case not unlike the one at bar. In *Kelly,* an attorney brought suit against a corporation for legal fees, alleging he had entered into a contract with the president of the corporation. *Kelly,* 306 Mass. at 531–33, 28 N.E.2d at 1006. The president had contracted with Kelly to defend a suit brought by a shareholder to appoint a receiver for the corporation and see to its dissolution. *Id.* When Kelly's bill was not paid, he brought suit against the corporation. *Id.* The language of the *Kelly* case is quite instructive when applied to the case at bar.

> There was no evidence of any authority having been delegated by the defendant to [Santor] to enter into the alleged special contract in the defendant's behalf, other than such inferences as might be drawn from the names of the office ... which he held. There was no evidence that he exercised powers of general management over the corporation or that he habitually attended to such matters as the defence of law suits.
>
> .    .    .    .    .
>
> In the cases in this Commonwealth in which a president ... has been held to have general authority to make con-

tracts it will be found that such authority has been delegated to him either expressly, by means of some by-law or vote of the directors relative to the matter in question or granting to the officer the powers of a general manager, or impliedly by reason of his continued exercise of similar powers in such a manner that knowledge and approval of the directors or a majority of them can reasonably be inferred.

> In the present case, these requirements are not met. The contract of employment here alleged related to a law suit of an unusual nature vitally affecting the possibility of continuing the corporation's business. The [prosecution] of such a suit does not fall within the familiar duties of a president . . . .
>
> Very likely an inference could be drawn from the work done by the plaintiff in the [Kerr faction's] behalf over a considerable period of time and the communications between the plaintiff and 'the defendant' in connection with it that the defendant knew that the plaintiff was performing work for which he expected to be paid, but we find nothing which can fairly support a finding that the corporation as distinguished from [Santor] knew of and ratified an express contract to pay the plaintiff . . . .

*Id.,* at 532–33, 28 N.E.2d at 1006–07 (internal citations omitted). The *Kelly* case indicates plainly that a corporate president, especially when dealing with a lawsuit involving corporate in-fighting, does not have the authority to engage counsel without the express consent of the board of directors. Santor did not have this authority, therefore, he could not enter into the fee arrangement on behalf of CFI.

Plaintiff's remaining arguments on this point are grounded on theories of ratification or estoppel based on the proposition that CFI's board knew of the con-

tract, did nothing to repudiate it, and received the benefit of the bargain entered into between Plaintiff and Santor. He cites several cases for this proposition. *Juergens v. Venture Capital Corp.*, 1 Mass. App.Ct. 274, 295 N.E.2d 398 (1973); *Bloomberg v. Greylock Broadcasting Co.*, 342 Mass. 542, 174 N.E.2d 438 (1961); *Valley Stream Teachers Federal Credit Union v. Commissioner of Banks*, 376 Mass. 845, 384 N.E.2d 200 (1978). Considering the merits of the underlying litigation, the notion that the CFI board of directors was a coherent enough body during the time period in which Plaintiff purported to represent the corporation such that any knowledge could be imputed to CFI is absurd. Furthermore, nothing in Plaintiff's performance in the underlying litigation could be said to have "benefitted" CFI in any way, as will be discussed below. For all of these reasons, there is no material issue of fact still in dispute as regards Plaintiff's claim for breach of contract, and summary judgment is therefore granted to the Defendant.

### B. Quantum Meruit

Plaintiff's second theory of liability is based in *quantum meruit*. In Massachusetts, there are three elements required to support a claim for *quantum meruit*. These are 1) that the plaintiff has conferred some measurable benefit on the defendant, 2) that the defendant accepted the services of the plaintiff with the expectation of compensating the plaintiff, and 3) that the plaintiff had a reasonable expectation of receiving compensation from the defendant for his efforts. *Bolen v. Paragon Plastics, Inc.*, 747 F.Supp. 103, 106–07 (D.Mass.1990). Here, there is no issue of material fact still in dispute as to the first of these elements. The Court will again take judicial notice of the record of the underlying litigation in making this determination.

Looking to these records, it becomes clear that Plaintiff has conferred no benefit on CFI through his efforts. In fact, his conduct in this case has cost CFI dearly. The best example of the damage Plaintiff has caused CFI as a result of his conduct is the loss of liability insurance for the interim directors of CFI. As a result of the various lawsuits that name CFI directors individually and the need for the Kerr faction board of directors to appear at the show cause hearing in March 2000, CFI lost liability coverage for its officers and board of directors. In order for the organization to remain viable, this Court granted immunity to each of the interim directors for their actions. *See* Exhibit 53, Order, filed August 16, 2000, in the Consolidated Civil Actions, *attached to* Defendant's Motion. Furthermore, Plaintiff's advice, or lack thereof, to the Kerr faction resulted in Kerr having to show cause why he should not be held in contempt. *See* Exhibits 35 and 45, *supra.*

Another example of the deleterious effect Plaintiff's representation had on CFI can be found in the "emergency action" purportedly taken on Plaintiff's advice by the faction of the board of directors he represented. Taking such "emergency action" was in and of itself a violation of this Court's order. *See* Exhibit 11, *supra; id.*, at Exhibit 45. Additionally, the actions taken resulted in harm to CFI including both violation of the Consent Judgment by publishing inflammatory material in the *Chosin Few News Digest* and a lawsuit brought by Hometown Bank against CFI. *Id.* Likewise, Plaintiff's advice to alter CFI's mailing address led to the postal dispute, harming CFI. Plaintiff has withheld monies from CFI in violation of this Court's Orders. All of these actions were detrimental to CFI.

The Plaintiff offers no support for his position that the issue of whether his ser-

vices conferred a benefit on CFI is still in dispute. He merely argues the fact that no benefit was conveyed without pointing to any affidavit, deposition, or other evidence which supports his claim. Plaintiff has not pointed to even a "mere scintilla" of evidence to support the position that his services were of value to CFI. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Therefore, no rational trier of fact could find for French on his claim for *quantum meruit* and CFI's motion for summary judgment on that issue is granted. *Id.,* at 248–49, 106 S.Ct. 2505.

Finally, the Defendant has moved, with the consent of the Plaintiff, to continue this case from the January 2002 term of this Court. As all of the substantive claims will be dismissed upon entry of this order, leaving only the motion for sanctions for decision, the motion for continuance will be denied as moot.

## V. ORDER

**IT IS, THEREFORE, ORDERED** that the phrase "and Counterclaim" be **STRICKEN** from the Ninth Affirmative Defense of Defendant's Answer.

**IT IS FURTHER ORDERED** the Tenth Affirmative Defense and Counterclaim of Defendant's answer is hereby construed as an affirmative defense and as a motion for sanctions pursuant to 28 U.S.C. § 1927. Accordingly, Plaintiff shall have 15 days from entry of this Memorandum and Order to respond Defendant's motion for sanctions. No further action is required of Defendant on this issue.

**IT IS FURTHER ORDERED** that Defendant's motion to dismiss Count Three of Plaintiff's complaint is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for judgment on the pleadings, motion for an extension of time, and Defendant's consent motion for continuance are **DENIED** as moot.